### CITY OF BUFFALO v. STEVENSON.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1911.)

1. APPEAL AND ERROR (§ 173*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

In an action by a city for a statutory penalty, where the defendant moved to dismiss solely on the ground that the statute was unconstitutional, the defendant cannot on appeal raise the question that there was no ordinance fixing the penalty, or that the common council had no authority to enact the ordinance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1120;  Dec. Dig. § 173.*]

2. EVIDENCE (§ 32*)—JUDICIAL NOTICE—MUNICIPAL COURTS.

A Municipal Court takes judicial notice of the ordinances of the municipality wherein it exists.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 42;  Dec. Dig. § 32.*]

3. EVIDENCE (§ 32*)—JUDICIAL NOTICE—APPELLATE COURTS.

On an appeal from a Municipal Court, the appellate court will take judicial notice of ordinances of the municipality in which the Municipal Court exists.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 42;  Dec. Dig. § 32;*  Appeal and Error, Cent. Dig. § 2959.]

4. EMINENT DOMAIN (§ 2*)—OPENING SURFACE OF STREETS—LICENSE FEE.

Buffalo Ordinances, c. 4, § 30, subd. 2, providing that, before any permits for the opening of a pavement shall be granted, the applicant shall pay to the city treasurer $5 for every such opening, to be credited to the street repair fund, and that any person who opens any street or alley without permission, or who shall fail to comply with any of the provisions of this section, shall forfeit and pay a penalty of $10, is not in violation of Const. art. 1, § 6, prohibiting the taking of private property for public use without just compensation, for the streets are within the control of the municipality.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

5. MUNICIPAL CORPORATIONS (§ 661*)—STREETS—POWER TO CONTROL—MUNICIPAL ORDINANCES—REASONABLENESS OF CHARGE.

Whether an ordinance providing for a fee for the opening of streets to make sewer and water connections is valid depends upon the reasonableness of the charge.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 661.*]

6. MUNICIPAL CORPORATIONS (§ 661*)—STREETS—POWER TO CONTROL—MUNICIPAL ORDINANCES—REASONABLENESS OF CHARGE—PRESUMPTIONS.

A fee provided for by a municipal ordinance for the privilege of opening streets to make water connections and the like will be presumed to be reasonable.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 661.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. MUNICIPAL CORPORATIONS (§ 594*)—POLICE POWER—CONSTITUTIONALITY OF ORDINANCE.

When the constitutionality of an ordinance regulating the opening of a city street is assailed, the safety and health of the city are elements to be taken into account.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 594.*]

McLennan, P. J., dissenting.

Appeal from Special Term, Erie County.

Action by the City of Buffalo against Arthur E. Stevenson. From a judgment of the Supreme Court, reversing a judgment of the Municipal Court of the City of Buffalo in favor of the defendant, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Henry W. Willis, for appellant.

Frank C. Westphal (Clark H. Hammond, Corporation Counsel), for respondent.

SPRING, J. The plaintiff, the city of Buffalo, claims the defendant is liable for a penalty of $10 in opening a street or alley in the city without obtaining a permit so to do. The substantial facts are undisputed, and the defendant succeeded in the Municipal Court on the ground that the license fee of $5 imposed by the ordinance of the city for the permit was in fact a tax, and renders the ordinance invalid.

The charter of the city (chapter 105, Laws 1896, and amendments) vests in the common council the authority to enact ordinances "to regulate the use of the streets, and to declare in what manner and for what purposes they shall not be used." Title 2, § 17, subd. 9. In pursuance of this authority, the common council, by ordinance, provided for granting permission "to the owner or occupant of any lot for the purpose of laying gas, sewer, or water pipe from the main pipe or sewer in said street or alley to the line of said lot, or for the purpose of repairing such pipe or sewer." Chapter 4, § 30, of Ordinances. The work has to be completed within the time directed by the chief engineer. Later, when the department of public works was created by the Legislature, the commissioner of that department was given control over the public sewers of the city and "of giving permits for house connections with the same." Title 10, c. 1, § 271, subd. 2. Subdivision 2 of said section 30 is as follows:

"Before any permits for the opening of a pavement shall be granted by the bureau of engineering of the department of public works, the applicant shall pay to the city treasurer a fee of five dollars for each and every such opening between the intersecting street lines in any block. The amount of such fees to be credited to the fund repairs of streets, bureau of engineering, department of public works, by the comptroller, June 30th, each year."

It is further provided in said section 30:

"Any person who shall open any street or alley for the purposes mentioned in this section, without the permission of the board of public works, or who shall fail to comply with any of the provisions of this section, shall forfeit and pay a penalty of $10 for each and every offense."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is assumed, although the record does not disclose the fact, that the defendant is a licensed plumber, and he opened the pavement on Fell alley, in said city, for the purpose of opening the sewer laid in that alley or street. He did not pay the $5 or obtain a permit authorizing him to open the street or alley. The evidence shows that this alley had been a public street for a great many years, was paved and with a sewer, all under the control of the city authorities.

[1] The counsel for the appellant claims that there was no proof of any ordinance imposing a penalty. There are several answers to this criticism.

(1) No such objection was suggested on the trial. In the motion to dismiss the complaint the counsel for the defendant stated the grounds specifically that the ordinance was unconstitutional, and not a proper police regulation, and that there was no consideration for the $5 charged for the permit. He did not claim there was no ordinance fixing the penalty, or that there was no authority in the common council to enact the ordinance. If such grounds had been urged, the proof could have been readily supplied. As to the power of the common council generally to fix penalties, see sections 20 and 23 of the charter.

(2) The attorney for the city offered in evidence chapter 4, § 30, subd. 2, of the City Ordinances, which included all of the chapter, or so much thereof as was pertinent, and which included the portion prescribing the penalty, and the opinion of the Municipal Court judge indicates that he considered the whole section in evidence.

[2, 3] (3) While it is true that the courts will not generally take cognizance of municipal ordinances, and they must be pleaded and proved, it has been held in other jurisdictions that this rule does not obtain in an action in Municipal Court of the city where the ordinance has been enacted. Ex parte Davis, 115 Cal. 445, 447, 47 Pac. 258; Downing v. City of Miltonvale, 36 Kan..740, 14 Pac. 281; 28 Cyc. pp. 393, 394. This action was brought to enforce the penalty in the Municipal Court, and "the ordinances are the peculiar law of that forum," which affords the reason for the departure from the general rule requiring proof of these ordinances. Upon appeal the appellate court also takes judicial notice of the ordinances. City of Solomon v. Hughes, 24 Kan. 211.

[4] Nor does the imposition and collection of the license fee of $5 offend against that clause of the state Constitution (art. 1, § 6) which prohibits the taking of private property "for public use without just compensation." The streets are within the control of the municipal authorities, and its sewers are constructed and maintained by the department of public works. If a street is opened to enable an occupant, whose lot fronts on the street, to make a connection with the sewer, the work must be done under the supervision of the city engineer, and, if a person should fall in the opening made and suffer injuries, the city may be liable for the damages sustained. In this case the opening was made Saturday, and was not closed until Monday or Tuesday following. During that time the duty of guarding the excavation in order to prevent accidents was upon the city. While it might protect itself by a bond, which would impose the duty of examining and ascertaining

as to the sufficiency of the instrument upon the officers of the municipality the person injured would look to the city for redress.

The legal title to Fell alley may not have been in the city, and probably was in the owners whose premises adjoined. The street control is the only subject of importance in this controversy. The alley was part of the street system, and the sewer of the sewer system. The regulation of the same by the city was essential for their proper enjoyment and for the safety and health of the public. The property right of the owner in the street is subsidiary to the public use. Whatever within reasonable limits is necessary to make effective the public user of the streets and to regulate the tearing up of the pavement or the opening of the sewers is within the competency of the common council. There must be some direct expense inevitably connected with the giving of the permit authorizing a person to tear up the pavement and open the sewer. The application must be examined and the permit .made out and entered. The supervision of the engineer must call for the personal attendance of some one in his behalf before and during the performance of the work. Some one representing the city must know that the aperture is properly noted by red lights during the night or by a barricade of some kind. When the work is completed, it is necessary for the city to have the street restored to its former condition. In addition, there are contingent liabilities which may arise and which are not ascertainable when the permission is granted or the work carried on. Impairment of the streets at times will result; and, in view of all these circumstances, the payment of the charge to the city is not a gratuity, is not without consideration.

[5] It seems to me the test of an exaction of this kind is whether the sum charged is reasonable, and the fee of $5 is not exorbitant. Water Co. v. Burgess, etc., of Darby, 199 Pa. 400, 49 Atl. 275.

[6] No proof was given that the charge made is unreasonable in amount. The presumption is that it is for a reasonable sum. Mayor, etc., v. D. D. E. B. &'B. R. R. Co., 133 N. Y. 104, 30 N. E. 563, 28 Am. St. Rep. 609; Grannan v. Westchester Racing Ass'n, 153 N. Y. 449, 462, 47 N. E. 896. In determining the validity of an ordinance of this kind, we must view it with reference to its general scope and object. In this particular instance the pavement may have been properly restored and no damage sustained by the city. In another case the license fee may be largely inadequate to cover the loss sustained. The ordinance was intended, not as a tax for revenue to the city, but to indemnify it in some measure against the cost and expense necessarily incurred, or which may be fairly anticipated to result from the opening of the street.

[7] The safety and health of the people of the city are elements to be taken into the account when such an ordinance is assailed as being repugnant to any provision of the state Constitution.

The judgment should be affirmed with costs. All concur, except McLENNAN, P. J., who dissents on grounds stated in opinion of judge of Municipal Court.