(92 Misc. Rep. 80)

### PEOPLE v. MAGNUS.

(Court of General Sessions, New York County. October, 1915.)

1. CRIMINAL LAW ☞48—CRIMINAL RESPONSIBILITY—EPILEPTIC.
   An epileptic is excused from criminal responsibility for an act done in violation of the law only when he is unconscious of the act which he is committing.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 53–58; Dec. Dig. ☞48.]

2. CRIMINAL LAW ☞570—DEFENSE—EPILEPSY.
   Where, in a prosecution for disorderly conduct tending to a breach of peace, the testimony of defendant that he was suffering from an attack of epilepsy and does not remember committing the act charged against him, is undisputed, a conviction is unauthorized.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1285–1288; Dec. Dig. ☞570.]

Appeal from City Magistrate's Court.

Julius Magnus was convicted of disorderly conduct tending to a breach of peace, and appeals. Reversed, and new trial ordered.

Henry Waldman, of New York City, for appellant.

Royal H. Weller, Asst. Dist. Atty., of New York City, for the People.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSALSKY, J.  The defendant was adjudged guilty by a city magistrate of the offense of disorderly conduct tending to a breach of the peace, and sentence was suspended upon him.

Prior to 1907 a defendant convicted in the City Magistrate's Court, and upon whom sentence was suspended, could not appeal to this court; but section 750 of the Code of Criminal Procedure, as amended (Laws 1907, c. 685), now accords him the right of appeal.  In pursuance of this section, the defendant, feeling aggrieved at the judgment rendered against him, appeals to this court.

[1]  The act attributed to him, and for which he was convicted, was committed, according to the undisputed medical evidence, while he was suffering from an attack of epilepsy.  He testified in his own behalf that he had absolutely no memory of having committed the act charged against him, and he interposed the defense of epilepsy, and particularly that form thereof which is known as epileptoid automatism.  A person afflicted with that form of disease is capable of committing an act which is apparently under his control and suggested or prompted by the operation of his mind, but the act may be accompanied by an abnormal and unnatural consciousness, in which case it is automatic and beyond the power of inhibition.  A person afflicted with epilepsy may, during a seizure, commit an act, and after recovering consciousness have total amnesia with regard thereto.

It does not follow that, because a person is an epileptic, he is incapable of committing a violation of law and must be excused from criminal responsibility; it is only when he is unconscious of the act which he is committing that he is not answerable criminally.  The disease frequently breaks out into what is known as epileptic furor, which comes without notice or special warning, and which after a brief period subsides.

[2]  Aside from the medical evidence that the defendant is an epileptic, the testimony of the police officer would seem to confirm the defendant in his statement that he had no memory of what had occurred immediately preceding his arrest.  The record clearly shows that the defense of epilepsy was not a figment of the defendant, intended to enable him to escape the consequences of his act.  The police officer, among other things, testified as follows:

"Q. You arrested the defendant?  A. Yes.  Q. You had a conversation with the defendant from Fulton Street station to the court here?  A. Yes.  Q. And did he tell you that he was subject to these seizures?  A. Yes.  Q. What did you say to the defendant, and what did he say to you, on the way to the courthouse?  A. He asked me where we were going, as we were riding in the patrol wagon up to this courthouse.  So I told him we were going to court.  He asked me, 'What for?'  I said, 'Well, I have told you so many times.'  Well, then he turned around and told me that he didn't remember nothing about it.  Then he took a card out of his pocket, and showed me the different attacks that he had, and marked it down with crosses, and that he had had them many times before."

At the conclusion of the case the magistrate stated that he had great difficulty in determining what judgment to render, but nevertheless he found the defendant guilty, and he suspended sentence.  As I read the record, there is not a particle of legal evidence which warranted

the learned magistrate in adjudging the defendant guilty. The record being barren of any evidence to disprove the testimony as to the defendant's state of mind, the defendant should have been discharged.

The judgment of conviction is therefore reversed, and a new trial ordered.

Judgment reversed, and new trial ordered.