# CRIMINAL CASES.

## Staunton.

## ALBERT L. COLLINS v. CITY OF RADFORD.

September 21, 1922.

1. ARREST—*Warrant—General Motion to Quash Warrant.*—Defendant, in a prosecution for violation of a city ordinance, made a motion in the corporation court "to quash the warrant for error apparent upon its face, but assigned no other ground therefor." The obvious meaning of this language was that the motion was general, and pointed out no specific objections to the form of the warrant.

2. ARREST—*Warrant—General Motion to Quash Warrant—Specific Charge of Violation of City Ordinance—Conclusion in the Name of the Commonwealth—Case at Bar.*—In a prosecution for violation of a city ordinance did not specifically charge a violation of a city ordinance, and concluded in the name of the Commonwealth and not in the name of the city. It did show, however, that it emanated in the city, for an offense against the prohibition law committed within the city limits, and that it was issued and was to be tried by the police justice of that city, whose jurisdiction as to such offenses was expressly confined by law to infractions of city ordinances. There was a general motion to quash the warrant for error apparent upon its face.

    *Held:* That the warrant could not be regarded as seriously irregular or defective; that there was no law prescribing any special form for the conclusion of a warrant, and that the conclusion of this warrant in the name of the Commonwealth even if irregular, was neither misleading nor inconsistent.

3. ORDINANCES—*Necessity to Plead and Prove Ordinance—Judicial Notice of Ordinance.*—Where a criminal prosecution for violation of a city ordinance originated in a municipal court of exclusive original jurisdiction, it was not necessary in that court to plead or prove the ordinance, and the same rule applies on appeals from municipal courts to

State courts, where the trial is to be had *de novo*.   In such cases the State courts hold the same relationship to the ordinances as the municipal courts.   Both the municipal and State courts are bound to take judicial notice of the existence and effect of the ordinance.

4.  APPEAL AND ERROR—*Criminal Cases—Appeal from Trial Justice to Corporation or Circuit Courts—Pleadings—Amendment—Case at Bar.*—On appeal from the judgment of a trial justice to the corporation or circuit court the appeal shall be tried without formal pleadings in writing (section 4990, Code of 1919); and the fullest provision is made for all amendments of the original warrant "in any respect in which it appears to be defective."   Code of 1919, section 4989.   Under the broad terms of section 4989, if there had been in the instant case, as there clearly was not, any substantial reason to suppose that the accused did not know from the warrant what he was charged with, the court could even have gone to the extent of discarding entirely the original warrant, issuing a new one for the offense, and proceeding to trial on that.

5.  APPEAL AND ERROR—*Criminal Cases—Appeal from Trial Justice to Corporation or Circuit Courts—Pleadings—Amendment.*—Under section 4990 of the Code of 1919 and section 4989 of the Code of 1919, providing that on appeal from the judgment of a trial justice to the corporation or circuit court the appeal shall be tried without formal pleadings in writing, and that amendments may be made of the original warrant in any respect in which it appears to be defective, the court is given a free hand in conducting the trial on appeal in such way as to guarantee every substantial right, on the one hand, and, on the other, to cut off frivolous and formal objections.

6.  APPEAL AND ERROR—*Criminal Cases—Appeal from Trial Justice to Corporation or Circuit Courts—Pleadings—Amendment—General Motion to Quash Warrant—Prejudice to the Accused.*—On appeal from the judgment of a trial justice to the corporation or circuit court in a criminal case, a general motion to quash the warrant on appeal, which points out no specific objections, cannot, under the terms of sections 4989 and 4990 of the Code of 1919, avail after verdict as against any defect in form unless it appears from the record of the trial that the accused was or could have been prejudiced thereby.

7.  INTOXICATING LIQUORS—*Warrants—Sufficiency—Municipal or State Offense.*—It is a sufficient answer to an objection that the defendant in a prosecution before a police justice for violation of a city ordinance could not have known under the warrant whether he was charged with a municipal or State offense; that the police justice had no jurisdiction as to violations of the prohibition law except in cases arising under ordinances of the city; that defendant called for a bill of particulars, and got it before trial, which showed that the city relied on the charge of transporting ardent spirits, and attempting to transport ardent spirits, and that in defendant's petition to

the Supreme Court of Appeals for a writ of error he complained of a judgment rendered against him "upon the trial of a warrant for a violation of the city ordinance."

8. INTOXICATING LIQUORS—*Second Offense—Charge of Second Offense—Proceedings before Police Justice.*—If a civil and police justice has jurisdiction to determine a charge for a second offense against the prohibition law, it is clearly proper to make the charge in a warrant, and such jurisdiction is expressly provided for by section 27 of the State prohibition law (Acts 1922, chapter 345).

9. INDICTMENT AND INFORMATION—*Warrant—Verdict of Guilty where there are two Counts, One Bad for Irregularity.*—Where in a prosecution for violation of a city ordinance no demurrer to the warrant which contained two counts was interposed and no motion was made to instruct the jury to disregard the first count, and there was a general verdict of guilty, which might well have been found under the second count, even if the first count was bad, the regularity of the judgment was not affected thereby.

10. INTOXICATING LIQUORS—*Warrant—Amendment—Failure to Use the Word "Unlawfully."*—It was objected to a warrant for transporting or attempting to transport ardent spirits that it failed to allege that the accused attempted to "unlawfully" transport ardent spirits. If this objection were good as an original proposition, the presumption would be that the trial court, if the objection had been pointed out, would have amended the warrant. Moreover, the evidence showed that the act which the accused was charged with having attempted was clearly unlawful, and, if he was guilty as charged, he was in no way prejudiced by the omission of the word from the warrant.

11. INTOXICATING LIQUORS — *Indictment — Warrant — "Unlawfully"—Ordinance Must Follow State Law.*—A city ordinance making it unlawful to transport ardent spirits must follow the State law as far as applicable. Acts 1922, chapter 345, section 27. Sections 3 and 3-a of that act declare that it is unlawful to transport or attempt to transport ardent spirits, except as thereinafter provided. The word "unlawful" is not a part of the description of the acts which these sections prohibit. It declares that the acts themselves shall be unlawful, and where the word "unlawful" does not form a part of the definition of the offense, and the act itself is declared to be unlawful, that word need not appear in the warrant or indictment charging the offense.

12. INDICTMENT AND INFORMATION—*Warrants—Negativing Exceptions and Provisos.*—While the rule as generally stated is that exceptions and provisos contained in the enacting clause of the statute must be negatived in a criminal complaint, and those which are not so contained may be omitted as being merely matters of defense, the more accurate statement of the rule is that only such exceptions and provisos as are essential to a description of the offense need be negatived,

without reference to their position in the statute. It is certainly not necessary to negative an exception in a subsequent section which is merely referred to in the enacting clause, and is not a necessary part of the definition of the offense.

13. INTOXICATING LIQUORS—*Form of Indictment*—*"Unlawfully."*—The form of indictment contained in the prohibition act uses the word "unlawfully," but it is expressly provided in that act that this form is not exclusive, and any good and sufficient indictment may be used.

14. INTOXICATING LIQUORS—*Exceptions*—*Burden of Proof on Accused.*— Section 60-b (Acts 1918, page 615) in terms provides that, if the accused in any case claims the benefit of any exception, the burden is on him to prove that he comes within it.

15. INTOXICATING LIQUORS—*Indictment or Warrant*—*Specifying Acts Constituting the Alleged Offense*—*Attempt to Transport Liquor.*—Section 3-a of the prohibition law (Acts 1918, chapter 388) expressly provides for a conviction of an attempt under an indictment for a completed offense. The prohibition act does not contemplate that the indictment, whether it charges an offense or merely an attempt, shall set out the specific acts constituting the same. A charge, either that the defendant transported ardent spirits, or that he attempted to transport them, is sufficient.

16. INTOXICATING LIQUORS—*Attempts to Commit Crime.*—While the courts must exercise judgment and discretion in construing any doubtful provisions of the prohibition act, the terms of the statute leave no room to doubt that any willful attempt to violate the law in any substantial particular must be regarded as a crime, and punishable accordingly. In other words, whenever a conviction ought to be sustained if the offense had been consummated, a conviction for conduct which in law amounts to an attempt to commit the same offense should be sustained.

17. INTOXICATING LIQUORS—*Attempt to Transport*—*Sufficiency of Evidence.*— In the instant case, defendant, an old offender, arranged with some person unknown to place a gallon of whiskey for him in a haystack. Defendant went to the haystack with the intent to get the whiskey and carry it away; he felt for it but could not find it because it had been previously removed. It was contended on behalf of defendant that his conduct in going for the whiskey and reaching into the haystack for it did not pass beyond the stage of mere preparation for the crime, and, further, that he could not be guilty of an attempt because the removal of the whiskey had rendered the consummation of the crime impossible.

*Held:* That the evidence was sufficient to support a conviction of an attempt to transport ardent spirits.

18. ATTEMPT TO COMMIT CRIME—*Essential Elements.*—In order to constitute an attempt to commit crime, two elements are essential—first, the intent to commit; and, second, a direct ineffectual act done towards its commission.

19. ATTEMPT TO COMMIT CRIME—*Acts of Preparation Distinguished from Attempts—Intoxicating Liquors—Case at Bar.*—While it is not always easy to draw the line between acts of mere preparation and acts standing in proximate and causal relation to what would be a consummation of the offense if its commission were completed, yet in the instant case, a prosecution for an attempt to transport ardent spirits, it is difficult to conceive of a more immediate and direct act towards the consummation of the offense than the effort on the part of defendant to get possession of the ardent spirits by reaching his hand into the haystack where it had actually been recently placed for his procurement, and where he thought it still remained.

20. ATTEMPTS—*Act must not be an Impossibility—Outside Interference.*—In order to constitute an attempt the act attempted must not be impossible, but this rule has reference to inherent impossibility, and not to cases where the impossibility has been brought about by outside interference, or grows out of extraneous facts not within the knowledge and control of the accused.

21. INTOXICATING LIQUORS—*Argument of Counsel—Harmless Error—Attempt to Transport—Case at Bar.*—In the instant case, defendant had arranged to have ardent spirits placed in a haystack for him, and the evidence showed that the spirits had, as a matter of fact, been placed in the haystack, and that defendant went to the haystack with the intent to remove the spirits. In his argument attorney for the prosecution asserted that if defendant thought the liquor was there, and had previously made arrangements for it to be there, he would be guilty, although in fact the liquor had never been put there.

*Held:* That if there was error in this statement, it was error in an abstract proposition of law, and under the facts of the case harmless.

Error to a judgment of the Corporation Court of the city of Radford.

*Affirmed.*

The opinion states the case.

*V. M. Sowder* and *R. L. Jordan,* for the plaintiff in error.

*H. C. Tyler,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

Upon an appeal from a sentence of conviction by the civil and police justice of the city of Radford for a vio-

lation of a city ordinance, the defendant, Albert L. Collins, was tried by a jury in the corporation court of said city, found guilty, and sentenced to the payment of a fine of $100.00 and imprisonment in jail for six months. To that sentence this writ of error was awarded.

[1] 1. The record shows that the defendant made a motion in the corporation court "to quash the warrant for error apparent upon its face, but assigned no other ground therefor." The obvious meaning of this language is that the motion was general, and pointed out no specific objections to the form of the warrant. The motion was overruled, and this action of the court is assigned as error.

The warrant was as follows:

"Virginia: City of Radford, to-wit:

"Whereas, R. H. Moore has this day made complaint and information on oath before me, John H. Stump, civil and police justice of said city, that Albert L. Collins did, on the_____day of January, 1921, and within twelve months last past, and within the city limits, unlawfully transport, sell, keep or store for sale, ardent spirits; the said Collins having previously, to-wit: on the 25th day of December, 1920, been convicted of storing and keeping for sale ardent spirits in the said civil and police justice's court and fined $400.00 and costs, and sentenced to serve sixty days in jail, which jail sentence was suspended by the said civil and police justice during the good behavior of the said Albert L. Collins.

"And the said Albert L. Collins on the_____ day of January, 1921, and within twelve months last past, within said city limits, did attempt to transfer, sell, keep or store for sale ardent spirits.

"These are, therefore, in the name of the Common-

wealth of Virginia, to command you that you forth-
with apprehend and bring before me the body of the
said Albert L. Collins to answer the said complaint and
information, and to be further dealt with according to
law.   And I further command you that you summon
R. H. Moore and Herbert Gibson as witnesses to tes-
tify against the said Albert L. Collins, in behalf of the
Commonwealth.

"Given under my hand and seal this 4th day of
February, 1921.

"JOHN H. STUMP,
"Civil and police justice    (L. S.)"


[2] We do not see anything on the face of this war-
rant which can be regarded as seriously irregular or
defective.   It did not specifically charge a violation of
a city ordinance, and it concluded in the name of the
Commonwealth and not in the name of the city.   But
it did show that it emanated in the city of Radford, for
an offense against the prohibition law committed within
the city limits, and that it was issued and was to be
tried by the police justice of that city, whose jurisdic-
tion, as to such offenses, was expressly confined by law
to infractions of city ordinances.   See act creating his
office, approved March 20, 1920, Acts 1920, page 275,
and section 24 (prohibition law), Acts 1918, page 598.
There is no law prescribing any special form for the
conclusion of a warrant, and the conclusion of this one
in the name of the Commonwealth, even if irregular,
was neither misleading nor inconsistent.   "In the last
analysis the municipality is, after all, but a *mere arm
or agency of the State*—and its power to punish is by
direct delegation from the State."   Lile's Notes on
Municipal Corporations, section 138.

[3] The case having originated in a municipal court

of exclusive original jurisdiction, it was not necessary in that court to plead or prove the ordinance. Lile's Notes on Municipal Corporations (1922), sec. 138a; 1 Dillon's Mun. Corp., sec. 413; 28 Cyc. 394; 17 A. & E. Ency. Law (2d ed.), 937; 2 McQuillin on Municipal Corporations, sec. 849; 15 R. C. L., p. 1077, sec. 16. There is practically no conflict of authority on this proposition.

Whether the same rule applies on appeals from municipal courts to State courts, where the trial is to be had *de novo*, as with us, is a question upon which there is a diversity of judicial decision. 15 R. C. L., p. 1078; 17 Am. & Eng. Ency. L. (2d ed.) 938; McQuillin Mun. Corp., sec. 861; 16 Cyc. 899. But the better considered view is, in our opinion, that in such cases the State courts hold the same relationship to the ordinances as the municipal courts. The former are, in that respect, *pro hac vice*, the latter. 2 McQuillin on Mun. Corp., sec. 861; *Moundsville* v. *Velton*, 35 W. Va. 217, 13 S. E. 373; *Portland* v. *Yick*, 44 Or. 439, 75 Pac. 706, 102 Am. St. Rep. 633; *Steiner* v. *State*, 78 Neb. 147, 110 N. W. 723; *Solomon* v. *Hughes*, 24 Kan. 211; *Downing* v. *Miltonvale*, 36 Kan. 740, 14 Pac. 281; *Milbank* v. *Cronlokken*, 29 S. D. 46, 135 N. W. 711, Ann. Cas. 1914-C, p. 1231; *Galen Hall Co.* v. *Atlantic City*, 76 N. J. L. 20, 68 Atl. 1092; *Sidelsky* v. *Atlantic City*, 84 N. J. L. 198, 86 Atl. 531; *Buffalo* v. *Stevenson*, 145 App. Div. 117, 129 N. Y. Supp. 125.

Both the police justice and the corporation court of the city of Radford were bound in this case to take judicial notice of the existence and effect of the ordinance; and there was no defect in the warrant by reason of its failure to allege the same.

We have adverted to the failure of the warrant to allege the ordinance, not because counsel have in any

way relied upon or referred thereto, but because we have thought it well to express our views upon the question. It is involved, though not adequately raised, in two other cases decided by us at this term, to-wit: *Wampler* v. *Corporation of Norton, post* p. 606, 113 S. E. 733, and *Spradlin* v. *City of Roanoke, post* p. 600, 113 S. E. 732. The question is quite likely to arise at any time in the multitude of similar prosecutions which are now of almost daily occurrence, and it is not, so far as we know, settled by any other Virginia decision.

[4-6] Furthermore, it ought to be observed in this connection that on the appeal to the corporation court the trial was expressly required to be conducted without formal pleadings (Code, section 4990); and the fullest provision is made for all amendments of the original warrant "in any respect in which it appears to be defective." (Code, section 4989.) Under the broad terms of the section last cited, if there had been, as there clearly was not, any substantial reason to suppose that the accused did not know from the warrant what he was charged with, the court could even have gone to the extent of discarding entirely the original warrant, issuing a new one for the offense, and proceeding to trial on that. The provisions of the statute are intended to give the court a free hand in conducting the trial on appeal in such way as to guarantee to the accused every substantial right, on the one hand, and, on the other, to cut off frivolous and purely formal objections. See *Harding* v. *Commonwealth,* 105 Va. 858, 52 S. E. 832; *Flint* v. *Commonwealth,* 114 Va. 820, 76 S. E. 308; *Robinson* v. *Commonwealth,* 118 Va. 785, 87 S. E. 553; *Harley* v. *Commonwealth,* 131 Va. 664, 108 S. E. 648.

In *Jones* v. *Commonwealth,* 100 Va. 842, 853, 41 S. E.

951, it was announced as the settled practice of this court to give the accused in a criminal prosecution the benefit of his demurrer to the indictment, or his motion to quash the writ of *venire facias* for error apparent on its face, although the special grounds of demurrer or the motion to quash were not pointed out.    Whether, under our present statutory provisions regulating procedure in felony cases or under formal indictments, we would follow that rule is a question which we need not now decide, because it is certain that a different rule prevails in misdemeanor cases originating before a justice of the peace.    *Harding's Case, Flint's Case, Robinson's Case* and *Harley's Case, supra.*    A general motion to quash a warrant on appeal, which points out no specific objections, cannot, under the terms of our statute as interpreted and applied in the decisions above cited, avail after verdict as against any defect in form unless it appears from the record of the trial that the accused was or could have been prejudiced thereby. The dockets of the trial courts, as is only too well known, are crowded with criminal cases, many of them appeals from sentences imposed by magistrates and police justices.    The statutes to which we have referred were intended to facilitate the prompt trial of cases— an end promotive of real justice to all parties—and we wish to make clear our purpose to further, as far as possible with due  regard for substantial rights, that increasingly important policy.    No backward step in this respect is to be considered.

[7] If it be suggested that the defendant could not know from this warrant whether he was charged with a municipal or a State offense, a sufficient answer is that the police justice had no jurisdiction as to violations of the prohibition law except in cases arising under ordinances of the city; that he "called upon the *plain-*

*tiff* for a bill of particulars," and got it before the trial, which showed that "the *City of Radford*" relied on "the charge of transporting ardent spirits," and "attempting to transport ardent spirits;" and that in his petition to this court for the writ of error he complains of a judgment rendered against him "upon the trial of a warrant for a violation of the city ordinance of the city of Radford."

As stated before, it does not appear that any reasons whatever were assigned in the lower court for the motion to quash the warrant except unnamed "errors apparent on its face." We shall now proceed to consider the only grounds which are, under this general objection, relied on or mentioned in the assignments of error.

It will be observed that the warrant contained two counts. The first charged that the defendant did "within twelve months last past and within the city limits, unlawfully transport, sell, keep or store for sale ardent spirits;  *  *  *  having previously, to-wit, on the 25th day of December, 1920, been convicted of storing and keeping for sale ardent spirits in said civil and police justice's court.  *  *  *." The second count charges that, within twelve months prior thereto and within the city limits, he "did attempt to transport, sell, keep or store for sale ardent spirits."

The first point made against the form of the warrant is a mere *quaere*, presented in the defendant's petition without discussion or citation of authority as follows: "It is familiar practice where the statute provides for greater punishment for the second or third conviction, to charge in the *indictment* former convictions, but can that be done before a magistrate, or in any forum other than a court of record?"

[8] This *quaere* relates only to the first count. If the civil and police justice had jurisdiction to determine a

charge for a second offense, it was clearly proper to make the charge in a warrant. Such jurisdiction is now expressly provided for by section 27 of the State prohibition law (Acts 1922, chapter 345). This express provision was not in force when the instant case was tried. But we need not pursue the *quaere* further for reasons now to be stated.

[9] No demurrer to the warrant was interposed and no motion was made to instruct the jury to disregard the first count. There was a general verdict of guilty, which might well have been found under the second count. This being true, even if the first count was bad, the regularity of the judgment was not affected thereby. (Code 1919, section 4923.)

[10-15] Another objection urged to the form of the warrant goes to the second count, and is that it failed to allege that the accused attempted to "unlawfully" transport ardent spirits. If the objection were good as an original proposition, the presumption would be that the court, if the objection had been pointed out, would have amended the warrant. As will hereinafter appear, the evidence shows that the act which the accused was charged with having attempted, was clearly unlawful, and if he was guilty as charged, he was certainly in no way prejudiced by the omission of that word from the warrant. But this aside, the objection, if adequately raised and in due time, was without merit. The ordinance must have followed the State law as far as applicable. Acts 1922, chapter 345, section 27. Sections 3 and 3-a of the act declare that it is unlawful to transport or attempt to transport ardent spirits, *except as thereinafter provided.* The word "unlawful" is not a part of the description of the acts which these sections prohibit. It declares that the acts themselves—that is, every transportation, etc., and at-

34

tempted transportation, etc., of ardent spirits—shall be unlawful, except as thereinafter provided. Where the word "unlawful" does not form a part of the definition of the offense, and the act itself is declared to be unlawful, that word need not appear in the charge. And, while the rule as generally stated is that exceptions and provisos contained in the enacting clause of the statute must be negatived in a criminal complaint, and those which are not so contained may be omitted as being merely matters of defense, the more accurate statement of the rule is that only such exceptions and provisos as are essential to a description of the offense need be negatived, without reference to their position in the statute. It is certainly not necessary to negative an exception in a subsequent section which (as in this case) is merely referred to in the enacting clause, and is not a necessary part of the definition of the offense. 10 Ency. Pl. & Pr. 497, 498; *Hill's Case,* 5 Gratt. (46 Va.) 682, 690-691; *Hendricks' Case,* 75 Va. 934, 943; *United States* v. *Cook,* 84 U. S. (17 Wall.) 168, 21 L. Ed. 538, 539. The form of indictment contained in the prohibition act uses the word "unlawfully," but it is expressly provided in the act that this form is not exclusive, and that any good and sufficient indictment may be used. Section 60-b (Acts 1918, page 615) in terms provides that if the accused in any case claims the benefit of any exception, the burden is on him to prove that he comes within it.

It is also said (and this is the only remaining objection urged against the form of the warrant) that it should have specified the acts of the defendant constituting the alleged attempt; citing *Clark's Case,* 6 Gratt. (47 Va.) 675. It must be remembered, however, that *Clark's Case* dealt with a formal indictment, and also that the proceeding there involved was controlled

by a general statute relating to attempts.   Even if the prosecution in the instant case had been under an indictment, the point here made would not have been good.   Section 3-a of the prohibition law expressly provides for a conviction of an attempt under an indictment for a completed offense.   It is clear that the prohibition act does not contemplate that the indictment, whether it charges an offense or merely an attempt, shall set out the specific acts constituting the same. A charge, either that the defendant transported ardent spirits, or that he attempted to transport them, is sufficient.   Furthermore, in this case the defendant called for a bill of particulars, which stated that under the second count the city relied "upon the charge of attempting to transport ardent spirits," and it does not appear that any motion was made to require a more specific statement.

2. We pass now to the merits of the case as actually made by the city of Radford against the defendant. It is conceded that the specific offense for which he was tried and convicted was an attempt to transport ardent spirits.   It is not questioned that such an attempt, if proved, would constitute a crime under the city ordinance.   This, indeed, seems to affirmatively appear from instruction No. 1, given by the court, which was as follows:   "The court instructs the jury that if they shall find the defendant guilty of an attempt to transport ardent spirits, they shall fix his punishment at a fine of not less than fifty dollars nor more than five hundred dollars, and confinement in jail not less than thirty days, nor more than six months, and if they believe from the evidence beyond a reasonable doubt, that the prisoner had been previously convicted of violation of ordinance No. 226 of the city of Radford, then in that case they shall fix his punishment at a fine of not

less than one hundred dollars and imprisonment in jail of not less than six months, nor more than one year."

There is no contention that the foregoing instruction failed to correctly set forth the terms of the city ordinance. The penalty fixed by the jury is shown by stipulation of counsel to have been in conformity with such ordinance.

This brings us to the important assignment of error in the case, and the one chiefly relied upon by counsel for the defendant, which is that the acts shown in evidence as having been done by him do not in law constitute an attempt to transport ardent spirits.

A proper disposition of the question thus presented makes it necessary to briefly set forth the facts, and we quote the following substantially correct and practically complete statement from the brief of counsel for the defendant, the matter in parentheses having been added by us from the evidence as reported in full:

"The facts proven are these: That on the 25th day of December, 1920, petitioner confessed to a violation of the prohibition law, and paid a fine of four hundred dollars, and costs, and was sentenced to serve sixty days in the city jail, which sentence was suspended by the civil and police justice.

"That on the_____day of January, 1921, Albert L. Collins, your petitioner, went to a haystack on the farm of a man by the name of Gibson, which is in the corporate limits of the city of Radford, and about one mile from the home of Albert Collins. That the said Collins had previously made arrangements with some person unknown to place a gallon of whiskey at said haystack for him. That Collins went to the said haystack between dusk and dark, and there felt for the whiskey. That Collins stated to Gibson and Moore, who arrested him, that somebody had promised to

leave him some whiskey there, and when asked how much he stated a fellow was going to leave him a gallon. (That he paid this person twelve dollars, but did not know the person.) He did not say what he was going to do with it. He stated that he came to the haystack for the whiskey. Prior to his going to the haystack for the whiskey, Gibson had found the same in the haystack and carried it to his barn, about one-fourth of a mile away from the hay stack, and then notified the policeman of the city of Radford. There was no whiskey at the hay stack at the time Collins was feeling for it, and he did not see it or get his hands on it (but reached into the place where it had been). That there was three gallons of whiskey found in the haystack instead of one gallon." (He was arrested practically in the act of trying to get the whiskey.)

It may be well, in approaching the discussion of this branch of the case, to dispel the perhaps natural first impression that as the offense attempted was merely a misdemeanor, and as such attempt failed, the cause is one of trifling importance. The act which the defendant was charged with committing was not *malum in se,* and at common law an attempt to commit it would not have constituted a crime of any grade. But all fair debate as to whether the offense in question here is to be considered as a sufficient foundation for prosecution and conviction in the courts of this State is absolutely concluded by the terms of the statute, Acts 1918, chapter 388, section 3-a, as follows: "It shall be unlawful for any person to attempt to do any of the things prohibited by this act. * * * And upon indictment for the violation of any provisions of this act the jury may find the defendant guilty of an attempt, etc."

Nor are we left without a guide as to the purpose and spirit with respect to which this law in all of its pro-

visions is to be construed. Section 58 of the law (Acts 1918, page 614) is as follows: "This entire act shall be· deemed an exercise of the police power of the State for the protection of the State, for the protection of the public health, peace and morals, and the prevention of the sale and use of ardent spirits, and all of its provisions shall be liberally construed to effect these objects."

[16] To be sure the courts must exercise judgment and discretion in construing any doubtful provisions in the act, but the terms of the statute leave no room to doubt that any willful attempt to violate the law in any substantial particular must itself be regarded as a crime and punishable accordingly. In other words, whenever we ought to sustain a conviction if the offense were consummated, we ought to sustain a conviction for conduct which in law amounts to an attempt to commit it. The law is expressly so written.

[17] Now, in this case, it is idle to say that the act which the defendant was trying to commit would not, if accomplished, have been a serious violation of the law. It was charged and proved that he was an old offender, and he had deliberately laid his plans for another infraction of the law—one for which we have frequently affirmed sentences of conviction. Therefore, unless we are to say that all mere attempts, as distinguished from accomplished acts, are to be ignored in the prohibition law, and section 3-a of the act practically nullified, the defendant in this case was a willful and substantial violator of the law and his conviction must stand, subject only to this question: Did his acts, combined with his purpose, in trying to consummate his plan, amount in law to an attempt? We think they did.

It is contended on behalf of the defendant that his conduct in going after the whiskey and reaching into the haystack for it did not pass beyond the stage of

mere preparation for the crime, and, further, that he could not be guilty of an attempt because the removal of the whiskey had rendered consummation of the crime impossible. We are unable to uphold these contentions. Much has been written with respect to attempts to commit crime, particularly as to the line of demarcation between preparation and attempted consummation, and as to attempts to commit crimes impossible of consummation. We shall not hope or endeavor to contribute anything new to this subject. The doctrine is said to be involved in much obscurity and confusion, but it seems fair to say that the general rules involved are well settled, that every case of attempt must be decided on its own facts, and that in most cases an application of the general rules need not be very difficult.

[18] In order to constitute an attempt to commit crime, two elements are essential—first, the intent to commit, and, second, a direct ineffectual act done toward its commission. *Hicks* v. *Commonwealth*, 86 Va. 223, 226, 9 S. E. 1024, 19 Am. St. Rep. 891.

[19] In this case the defendant's intent to get the whiskey and carry it away, if not conceded, is proved by conclusive and uncontradicted evidence, and it is in our opinion not less clear that in legal contemplation he performed a direct ineffectual act towards the consummation of that intention. It is not always easy to draw the line between acts of mere preparation and acts standing in proximate and causal relation to what would be a consummation of the offense if its commission were completed. It is here, and not in the statement of the general rule, that obscurity and confusion will sometimes arise. This case, however, is free from serious difficulty. It is difficult to conceive of a more immediate and direct act towards the consummation of the offense than the effort on his part to get posses-

sion of it by reaching his hand into the haystack where
it had actually been recently placed by his procurement,
and where he thought it still remained.

[20] It is quite true that, owing to the recent removal
of the whiskey, consummation of the attempt was im-
possible, but the impossibility of performance was not
of a kind to rob his act of its criminal character. All
the authorities hold that in order to constitute an at-
tempt the act attempted must not be impossible, but
this rule has reference to inherent impossibility, and
not to cases where the impossibility has been brought
about by outside interference, or grows out of extrane-
ous facts not within the knowledge and control of the
accused. 8 R. C. L., p. 280, sec. 298, and other author-
ities cited below.

The Virginia decisions dealing with attempts to com-
mit crime, except in so far as they lay down the general
rule as to the essential elements of the offense, are not
very helpful in this case, because none of them are very
similar in their facts.

The case of *Foster* v. *Commonwealth*, 96 Va. 306, 31
S. E. 503, 42 L. R. A. 589, 70 Am. St. Rep. 846, relied
upon by the defendant, is not at all in point. It be-
longs to that class of cases in which the law conclusively
presumes that certain persons are incapable of com-
mitting certain crimes. This is an exception to the
general rule that an impossibility not necessarily in-
herent, and not known to the accused, constitutes no
defense. The distinction is pointed out in 3 Am. &
Eng. Ency. L. (2d ed.), p. 270.

The case of *Hicks* v. *Commonwealth*, 86 Va. 223, 9
S. E. 1024, 19 Am. St. Rep. 891, especially relied upon
by counsel for the defendant, contains nothing which
in any way conflicts with the view that the defendant
here was guilty of the attempt charged. The court in

that case held that procuring poison and delivering it
to a third person to be administered to the intended
victim was merely an act of preparation, and did not
have sufficient proximate and causal relation to the in-
tended crime to constitute the requisite overt act.   The
intention to commit the crime was clearly shown, but
the conduct of the accused got no farther than prepara-
tion therefor and solicitation of a third party, who failed
to take any steps towards carrying out the criminal de-
sign.   In the instant case the defendant not only made
all necessary preparation, but actually performed the
final causal act which would have resulted in consum-
mation of the offense but for the recent removal of the
object without his knowledge.

In *Lynch* v. *Commonwealth,* 131 Va. 769, 109 S. E.
418, 420, quoting in part from Wharton's Criminal Law
(11th ed.), section 224, we said: "An attempt to be
indictable and punishable 'need not be capable of suc-
cess;  *   *   *   it being clear that apparent adapta-
tion may constitute the attempt.  *  *  * It is enough
if there is a possibility   *   *   *.' "

In *Commonwealth* v. *Jacobs* (Mass.), 9 Allen 274, Mr.
Justice Gray said that "whenever the law makes one
step towards the accomplishment of an object, with the
intent or purpose of accomplishing it, criminal, a person
taking that step, with that intent or purpose, and him-
self capable of doing every act on his part to accomplish
that object, cannot protect himself from responsibility
by showing that, by reason of some fact unknown to
him at the time of his criminal attempt, it could not be
fully carried into effect in the particular instance."

In *People* v. *Moran,* 123 N. Y. 254, 25 N. E. 412, 10
L. R. A. 109, 20 Am. St. Rep. 732, the court said, that
while the cases on the subject in England were not uni-
form, "in this country, however, the courts   *   *   *

have adopted the more logical and rational rule, that an attempt to commit a crime may be effectual although for some reason, undiscoverable by the intending perpetrator, the crime under existing circumstances may be incapable of accomplishment."

In Freeman's note to the case of *People* v. *Moran*, *supra*, the learned annotator said: "It is a general rule that where an intended criminal result is not accomplished simply because of an obstruction in the way, or because of the want of the thing to be operated upon when the impediment is of a nature to be unknown to the defendant who used what seemed to be appropriate means, the criminal attempt is committed."

In 1 Bishop's Criminal Law (7th ed.), sec. 742, the author says: "In reason the rule is, that if there is an intent to do what in law constitutes a substantive crime, and the person intending such crime proceeds in its commission till interrupted by some unforeseen impediment or lack, outside of himself, special to the particular case, and not open to observation, he commits the indictable attempt." And this rule, the learned author says in section 743, represents the doctrine as established by the better considered American decisions.

The authorities in this country, generally, are to this effect, and citation thereof might be extended to indefinite length. We add only the following: 1 Wharton Cr. Law (11th ed.), sec 224; 3 Am. & Eng. Ency. L. (2d ed.), p. 271; 16 C. J. 116; 8 R. C. L., p. 280, sec. 298.

It follows that the second assignment of error, which, while challenging the action of the court in giving and refusing instructions, is necessarily settled by the conclusion we have above announced, must be overruled.

[21] 3. During the closing argument of the case, the attorney for the city of Radford used the following language: "It makes no difference whether the liquor was

ever put there. If he thought it was there and had previously made arrangements for it to be put there and went after it, then he is guilty of attempting to transport ardent spirits, although the liquor, as a matter of fact, had never been put there." To this language the defendant by counsel objected, but the court declined to sustain the objection and permitted the attorney for the city to rely upon the statement as a correct interpretation of the court's instructions upon the law of the case.

This assignment of error raises a question which we need not decide. If the statement of the city attorney, as a proposition of law and as an interpretation of the court's instructions, was erroneous, it could not have prejudiced the defendant. The evidence showed that the whiskey had as a matter of fact been placed in the haystack, and the defendant could not have been harmed by counsel's statement to the jury, that the prisoner would be equally guilty if no whiskey had ever been placed there. If there was error in the statement of counsel, it was error in an abstract proposition of law, and under the facts of the case entirely harmless.

For the reasons stated, the sentence of the corporation court is affirmed.

*Affirmed.*