**Richmond**

CHARLES E. PARHAM

v.

COMMONWEALTH OF VIRGINIA

No. 0006-85

Decided August 5, 1986

COUNSEL

James T. Edmunds, for appellant.

Russell C. Williams, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Charles E. Parham was convicted of two counts of attempting to sell methamphetamine, in violation of Code §§ 18.2-248 and 18.2-257. He was fined $1,000 and was sentenced to serve twelve months in jail on each count. His appeal presents two issues for decision: (1) whether he could be convicted of an attempt to sell a Schedule II substance, methamphetamine, when the evidence showed that the substance was procaine, a Schedule VI drug, the sale of which is not unlawful; and (2) whether the evidence proved him guilty of two counts of attempted distribution, rather than one. Finding no reversible error, we affirm the convictions.

### I.

Parham was apprehended as a result of a twenty-five day undercover narcotics operation. Tommy Immel, a Commonwealth informer, participated in arranging drug transactions between Parham and Walter Farmer, a special agent of the Virginia State

Police. The first such transaction was for a quarter ounce of crystal methamphetamine, which Parham delivered to Immel's house on February 8, 1984. After the delivery, the parties discussed an additional transaction to purchase larger quantities of the same drug, crystal methamphetamine. Parham quoted prices for one and two ounces and stated that he would require fifty percent "up front." Farmer mentioned the possibility of "going up to a quarter" (four ounces) at "eight grand," and Parham responded, "it could be, we might be able to arrange it."

Parham and Immel used a code to conduct the transaction over the telephone in which a "saw" was a quantity of drugs and "teeth" were grams. Parham contacted Immel on February 22, 1984, and said that he had something Immel wanted. Using the code, Immel asked, "How many teeth?" Parham replied, "One big one," referring to one ounce. Immel came to Parham's house where Parham weighed out fifteen grams of the substance and gave it to Immel for delivery to Farmer. Immel left but later called Parham, saying that Farmer would "take the balance of the thing." Later that night, Farmer came to Parham's house, and Parham delivered the remaining thirteen grams to him.[1] Both parties to the transaction believed the substance was crystal methamphetamine.

Parham was arrested and later charged with two counts of attempting to distribute methamphetamine, a controlled substance. Laboratory analysis conclusively determined that the substance delivered to Farmer by both Immel and Parham was procaine, a Schedule VI drug, not methamphetamine, a Schedule II drug. The sale of procaine is not illegal. However, the record establishes that at the time of the transactions, both Parham and Immel believed that the drug was methamphetamine.

## II.

On this factual background, Parham argues that because the sale of procaine is not illegal, it was legally impossible for him to commit the crime of attempted distribution. While facially this position has a certain logical appeal, it is not compatible with a careful analysis of Virginia decisions or what we believe to be the better reasoned decisions from our sister jurisdictions. A proper

[1] An ounce contains 28.350 grams.

resolution of the issue presented rests in an analysis of the doctrines of legal and factual impossibility as a defense to a charge of criminal attempt. Legal impossibility occurs when a defendant's actions, even if fully carried out exactly as he intends, would not constitute a crime. Factual impossibility occurs when the actions intended by a defendant are proscribed by the criminal law, but a circumstance or fact unknown to the defendant prevents him from bringing about the intended result. Traditional analysis recognizes legal impossibility as a valid defense but refuses to recognize factual impossibility. *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976).

In *Foster v. Commonwealth*, 96 Va. 306, 31 S.E. 503 (1898), the court was presented with a classic example of legal impossibility. There, a boy under the age of fourteen was charged with the crime of rape. Under the common law, there was a conclusive presumption that a boy under fourteen lacked the capacity for rape. Because this presumption was still in effect in Virginia, it was held that the underage defendant, not being able to commit the substantive crime, could not be convicted of the attempt. *Id.* at 311, 31 S.E. at 505.

The facts and circumstances in *Collins v. Radford*, 134 Va. 518, 113 S.E. 735 (1922), illustrate the doctrine of factual impossibility. The defendant had arranged for a gallon of bootleg whiskey to be hidden in a haystack on Gibson's farm. Gibson detected the whiskey, removed it before the defendant arrived, and called the police. The defendant was arrested while searching in the haystack for the whiskey. He argued that the removal of the whiskey had rendered impossible the consummation of the crime of attempting to transport spirits. Rejecting this argument, the court referred to the type or nature of the impossibility that constituted a defense:

> All the authorities hold that in order to constitute an attempt the act attempted must not be impossible, but this rule has reference to inherent impossibility, and not to cases where the impossibility has been brought about by outside interference, or grows out of extraneous facts not within the knowledge and control of the accused. 8 R. C. L., p. 280, sec. 298, and other authorities cited below.

*Id.* at 536, 113 S.E. at 741.

To illustrate the prevailing rule, the court in *Collins* then quoted from 1 Bishop's Criminal Law § 742 (1882):

"In reason the rule is, that if there is an intent to do what in law constitutes a substantive crime, and the person intending such crime proceeds in its commission till interrupted by some unforeseen impediment or lack, outside of himself, special to the particular case, and not open to observation, he commits the indictable attempt."

*Id.* at 538, 113 S.E. at 741.

In *Trent v. Commonwealth*, 155 Va. 1128, 156 S.E. 567 (1931), the defendant asserted impossibility as a defense to a charge of attempting to manufacture ardent spirits. He was apprehended while tending the fire beneath a still, but no "still worm"—a spiral tubing device essential to the distillery process—was found by the arresting officers. In rejecting the defense of impossibility, the court relied on the analysis in *Collins* and found that the impossibility of performance arose out of the intervention by the officers (unforeseen impediment), and not out of the absence of the "worm." *Id.* at 1136, 156 S.E. at 569. Parham relies heavily on the court's analysis in *United States* v. *Oviedo*, where the facts are strikingly similar to those in the present case. *Oviedo* held that when a defendant sold a substance thought to be heroin, which in reality was procaine, no criminal offense was shown in the absence of "objective acts unequivocally corroborative of criminal intent." 525 F.2d at 885. After a careful review of the record, the court could not find objective acts that were unequivocally corroborative of criminal intent and, thus, reversed the conviction. The court criticized the traditional analysis of legal and factual impossibility and applied instead an "unequivocal objective acts" concept. *Id.* at 884-85. While it might be argued that there is no valid conceptual difference between the two approaches, we see no reason to engage in such a dialectic. From *Foster, Collins*, and *Trent*, the doctrines of legal and factual impossibility have become firmly established as the law in the Commonwealth. Their application on a case-by-case basis provides a practical solution to the issue of impossibility. To the extent that *Oviedo* departs from a traditional legal and factual impossibility analysis, we decline to follow it.

Turning then to the facts in the present case, Parham had completed every act necessary for commission of the substantive crime. The only reason the distribution was not a crime was a defect in the substance itself, which was unknown to Parham. The impossibility was clearly factual, not legal, and as such, may not be asserted as a defense to the attempted crime.

## III.

With respect to the second issue presented, Parham contends that only one sale to Walter Farmer was contemplated. He argues that the transaction was for one ounce of procaine and the fact that it was accomplished by two deliveries of one-half ounce each did not make it two separate transactions. However, Parham admits that this issue was not raised in the trial court.

The Commonwealth contends that there were two deliveries, one to Immel and one to Farmer. Each delivery was a separate transaction and constituted an attempt. In support of its position, the Commonwealth points out that the evidence does not clearly show that Parham knew with certainty how much methamphetamine he could get or how much methamphetamine Farmer wanted to purchase. Because this issue was not raised at trial, we decline to notice it for the first time on appeal. Rule 5A:18.

We find no reversible error in the record; therefore, the convictions are

*Affirmed.*

Benton, J., and Cole, J., concurred.