PRESENT: Hassell, C.J., Lacy, Koontz, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

THOMAS EDWARD HIX

OPINION BY
v.  Record No. 042717                   JUSTICE G. STEVEN AGEE
                                        September 16, 2005
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Thomas Edward Hix was convicted by a jury in the Circuit Court of Stafford County of attempted indecent liberties with a minor, Code § 18.2-370 (the "attempted indecent liberties statute"), and the use of a computer to solicit a minor, Code § 18.2-374.3 (the "communications statute").[1]  The Court of Appeals denied Hix' petition for appeal, and he timely appealed to this Court.  For the reasons set forth, we will affirm the judgment of the Court of Appeals.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Hix, using the screen name "happyone345," engaged in several electronic communications in an Internet "chat room" with a person using the screen name "heather_boon" ("Heather"). Heather claimed to be a 13-year-old girl[2] but was, in fact, State Police Special Agent C.D. Wells.

---

[1] Hix was indicted on two counts of each charge.  He was found guilty of one count of each charge for his conduct on November 14, 2001, and acquitted of the remaining two counts based upon his conduct on November 27, 2001.
[2] Excerpts from the chatroom transcript read as follows:
happyone345:   your not a bad girl are you . . . sex and messin
               around

On November 14, 2001, Hix contacted Heather, but when Hix learned Heather's age, he terminated the internet conversation saying that she was too young. Five minutes later, Hix contacted Heather again and wrote that he worked in Fredericksburg, lived in Manassas, and worked for the government. The conversation ended with Hix saying again that Heather was too young.

Just minutes later, Hix contacted Heather for a third time. Agent Wells "captured"[3] this third conversation, in which Hix asked Heather about her prior sexual experiences and asked her to describe her body, with particular reference to her sexual characteristics. Hix also described particular sexual acts that he wanted to engage in with her, invited her to "hook up," and admitted that he "[could] get 30 years in prison." Hix ended the conversation by instructing Heather to add his contact information to her computer "friends" list, and asked her to contact him again later.

---

```
heather_boon:  some times i guess but it is hard at 13
                         . . . .
happyone345:   how old are you
heather_boon:  13 u don't remember me do ya
happyone345:   yes you are the girl that said you where a bad
               girl
                         . . . .
happyone345:   tell me about you []again . . .
heather_boon:  i am 13
happyone345:   oh yea
[sic]
```

On November 27, 2001, Heather observed that Hix was online and contacted him. Hix suggested that he and Heather meet at a local McDonald's restaurant, but Heather replied, "today is not good I don't want 2 give u the flu [sic]." Agent Wells testified that he did not have enough information on Hix' location to arrange a meeting at that time. Hix asked Heather's age and she again told him she was 13. He repeated his desire to engage in certain sexual acts with her. Heather ended the conversation when Hix was no longer responding.

By March 28, 2002, Agent Wells had determined that Hix was using a computer located at the National Guard Armory in Fredericksburg, and Heather initiated a third contact with Hix. Heather reminded Hix that he had previously "wanted 2 [sic] go to lunch." Hix responded that they could "just ride and mess around." Heather reminded Hix that she was 13 years old, and Hix replied, "[S]ee, I'm messed up . . . . [T]hey would put me under the jail for messen [sic] with you[,] girl." Nevertheless, Hix told Heather he would be at the McDonald's restaurant near the intersection of Routes 3 and 1, driving a red Ford Thunderbird coupe.

The police observed a vehicle matching the description Hix gave to Heather arrive at the McDonald's restaurant about 20

---

[3] When a chat room conversation is "captured," it is saved verbatim as a text file.

minutes later. Hix was driving and parked the car near the back of the restaurant. Hix told Lieutenant Bowler, the first law enforcement officer to approach him that he was there to meet a 13 year old girl that he had met on the Internet, that the girl's name was Heather Boone and that she was having problems and he was there to see if he could help her. Wells then approached Hix and introduced himself as "Special Agent Wells with the Virginia State Police . . . also known as Heather Boone." Hix admitted to the police officers that he had participated in the conversations with heather_boon/Agent Wells, and further admitted that he believed that the girl he was going to meet at the McDonald's was, in fact, 13 years old. Hix identified the computer located in the Bravo Company orderly room at the Fredericksburg National Guard Armory as the one he used to communicate with Heather.

At trial, however, Hix testified that Agent Wells' recollection of their conversation at the McDonald's was incorrect and that he, in fact, informed Wells and the other officers that he "was there to meet somebody who said that they were a thirteen year old that [he] didn't believe." Hix' own signed statement affirmed that he agreed to lunch with Heather at her invitation, that he "felt uncomfortable" but "thought that she may be in some kinda [sic] trouble as she [said] she was skipping school."

4

In his own case-in-chief, Hix testified variously that he was just curious, that he thought that Heather was not really 13 years old, but was an adult "role-playing" and alternately that he was afraid she was in some kind of trouble and needed his help.

At the conclusion of the Commonwealth's evidence, Hix moved to strike the attempted indecent liberties charge on grounds the crime was a "legal impossibility" as there was no actual 13-year-old girl with whom the taking of indecent liberties could have been accomplished. He contended that the communications statute charge should be struck because the "or has reason to believe" standard under Code § 18.2-374.3(B) is an improper standard because "[a]ctual knowledge should be the standard." The Court denied the motion to strike at that time and when later renewed. The jury found Hix guilty of attempted indecent liberties with a child and use of a communication system for soliciting sex with children for his conduct on November 14, 2001. The jury fixed Hix' punishment at two and one-half years imprisonment for each offense, and the trial court set the sentences to run concurrently.

On appeal to the Court of Appeals, Hix argued that the evidence was insufficient to support a conviction on either charge. First, he contended it was legally impossible under these circumstances to commit the crime of attempted indecent

5

liberties with a child under Code § 18.2-370 because Heather was not a real child. Further, Hix argued that his indictment and conviction under the communications statute as it existed at the time of the offenses was a conviction under only subsection A of that statute: "use [of] a communications system . . . [to] procur[e] or promot[e] the use of a minor for any activity in violation of § 18.2-370" and not subsection B: "use [of] a communications system . . . [to] solicit[] any person he knows or has reason to believe is a minor for . . . any activity in violation of . . . § 18.2-370."  Hix argued that conviction under Former Code § 18.2-374.3(A) (1996 & Supp. 2001), necessitated the existence of a "real minor" and thus the evidence did not support his conviction under the communications statute.

The Court of Appeals denied Hix' petition for appeal, rejecting Hix' first argument and ruling that his second argument was procedurally barred as he did not raise it in the trial court.

On appeal to this Court, Hix contends that the trial court erred in denying his motion to strike because the evidence was insufficient to prove the charges under either statute. Additionally, he argues that the Court of Appeals erred in deciding that the language of the indictment under the communications statute allowed conviction under either

6

subsection of Code § 18.2-374.3, and that Hix had conceded that he believed he was communicating with a minor.  Further, Hix assigns error to the Court of Appeals' judgment that he was procedurally barred from raising the following arguments: (1) conviction under the Communications statute required the existence of a "real minor," (2) the difference between preparation and attempt, and (3) the logical similarity between the role of an undercover police officer in certain attempted sex crimes and the role of an undercover officer in a drug conspiracy.

## II. ANALYSIS

A verdict of the jury, upon which the trial court enters judgment, settles all conflicts of testimony in favor of the prevailing party and entitles that party to all just inferences deducible therefrom. Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980).  We view the evidence in the light most favorable to the Commonwealth, as the prevailing party, and will not set aside the verdict unless it is plainly wrong or without evidence to support it. Beavers v. Commonwealth, 245 Va. 268, 281-82, 427 S.E.2d 411, 421 (1993).  We review questions of law de novo.  Simon v. Forer, 265 Va. 483, 487, 578 S.E.2d 792, 794 (2003).

### A. Code § 18.2-370: Attempted Indecent Liberties with a Child

7

Hix argues that the crimes described by Code § 18.2-370[4], whether the completed crime or an attempt, require acts directed toward an actual child.  Because the evidence showed that Heather was not an actual child, but an adult law enforcement officer posing as a child, Hix contends the evidence cannot support his conviction for the attempted crime as a matter of law.

Although the issue is framed as one of sufficiency of the evidence, Hix' arguments center on the applicability of the defense of impossibility.  In considering such a defense, a

---

[4] Code § 18.2-370 provides in pertinent part as follows:
A. Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally commit any of the following acts with any child under the age of fourteen years shall be guilty of a Class 5 felony:
(1) Expose his or her sexual or genital parts to any child . . . or propose that any such child expose his or her sexual or genital parts to such person; or
. . . .
(3) Propose that any such child feel or fondle the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child; or
(4) Propose to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or
(5) Entice . . . or invite any such child to enter any vehicle . . . or other place, for any of the purposes set forth in the preceding subdivisions of this section.

distinction must be made between legal impossibility and factual impossibility.[5]

> Legal impossibility occurs when a defendant's actions, even if fully carried out exactly as he intends, would not constitute a crime. Factual impossibility occurs when the actions intended by a defendant are proscribed by the criminal law, but a circumstance or fact unknown to the defendant prevents him from bringing about the intended result.

Parham v. Commonwealth, 2 Va. App. 633, 636, 347 S.E.2d 172, 173-74 (1986) (citing United States v. Oviedo, 525 F.2d 881, 883 (5th Cir. 1976)).

Hix' explicit communications with Heather and his proposal that they "hook up," if fully carried out exactly as he intended, would constitute a crime under the indecent liberties statute. Id. Only the fact that Agent Wells impersonated a 13-year-old girl "prevent[ed] [Hix] from bringing about his intended result." Id. Thus, we find that Hix' defense is one of factual, not legal impossibility. As Professor LaFave points out, this is an important distinction because

---

[5] Hix urges this Court to adopt a third kind of impossibility defense: "hybrid legal impossibility." Under this theory, a mistake of fact about the legal status of some necessary element of the crime nullifies a crime of attempt. In accordance with the large majority of jurisdictions, we decline to adopt this position. See, e.g., United States v. Farner, 251 F.3d 510, 513 (5th Cir. 2001); United States v. Darnell, 545 F.2d 595, 598 (8th Cir. 1976); People v. Rojas, 358 P.2d 921, 923-24 (Cal. 1961); State v. Moretti, 244 A.2d 499, 503 (N.J. 1968).

> what is usually referred to as "factual impossibility" is no defense to a charge of attempt. That is, if what the defendant intends to accomplish is proscribed by the criminal law, but he is unable to bring about that result because of some circumstances unknown to him when he engaged in the attempt, then he may be convicted.

2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, § 11.5(a)(2), at 233 (2d ed. 2003). While the distinction between factual and legal impossibility is not always susceptible to a bright line of demarcation, our precedent provides guidance.

Hix argues that the Court of Appeals incorrectly characterized his defense as one of factual impossibility and contends it is one of legal impossibility. He cites <u>Collins v. Radford</u>, 134 Va. 518, 536, 113 S.E. 735, 741 (1922), and <u>Trent v. Commonwealth</u>, 155 Va. 1128, 1136, 156 S.E. 567 (1931), for the proposition that "[i]f there is some factual condition necessary to the completion of the crime, then the non-existence of that factual condition makes the crime impossible." Hix misreads our decisions.

In <u>Collins</u>, the defendant was charged with attempting to transfer "ardent spirits." <u>Collins, 134 Va</u>. at 523, 113 S.E. at 737. He made arrangements with another to hide a gallon of whiskey in a haystack for him, but before the defendant could retrieve it, a farmer found the whiskey and turned it over to

10

the police.  Id. at 532-33, 113 S.E. at 740.  When the defendant returned to retrieve the whiskey, he was arrested.  Id.

We rejected the defendant's defense of impossibility because "the impossibility of performance was not of a kind to rob his act of its criminal character."  Id. at 536, 113 S.E. at 740. We held that a defense of impossibility is applicable only in those situations where the impossibility is "inherent . . . and not to cases where the impossibility has been brought about by outside interference, or grows out of extraneous facts not within the knowledge and control of the accused."  Id.  In the defendant's case, he did not know that the farmer had removed the whiskey from the haystack.  It was only this extraneous event not within the defendant's knowledge and control, that prevented him from completing the illegal transaction.  As such, the transaction was not inherently or legally impossible, but only factually impossible.  Had the facts been as the defendant intended them to be, he would have completed the criminal act of transporting ardent spirits.  Thus, he was guilty of the attempted act.

In Trent, the police discovered an illegal still where the defendant and others were preparing to manufacture illegal spirits.  Trent, 155 Va. at 1130, 156 S.E. at 567.  Before the men could complete the process, the police raided the still and

11

apprehended the defendant.  Id.  He argued that because a "worm"[6] was never found, "it [was] impossible to carry out the processes of distillation" and that this impossibility was a defense.  Id. at 1136, 156 S.E. at 569.  We agreed that if the "worm" were proven not to exist, the defendant's defense could stand, because consummation of the crime would be "inherently impossible."  Id.  While we found that "the conclusion is inevitable that [the] 'worm' was . . . immediately available" and thus, not proven absent, we rejected the reasoning that the absence of the "worm" would justify an impossibility defense as an "extraneous fact not within the knowledge or control of [the defendant]."  Id. at 1136-37, 156 S.E. at 569, 570.  Read in context, a defense of impossibility could only be viable for the defendant had he specifically intended to go through the motions of working the still without the "worm."  However, if his plans to manufacture the spirits were carried out exactly as he intended, with the "worm" in place, the defendant could be charged with attempting to manufacture illegal spirits, even if the "worm" was not currently present.  The fact that his plan was interrupted by law enforcement officers could therefore not bolster the defendant's effort to assert an impossibility defense.

---

[6] A "worm" is "a spiral condensing tube used in distilling." Webster's Third New International Dictionary 2636 (1993).

12

Our decisions in Collins and Trent differentiate between legal and factual impossibility to the effect that while legal or "inherent impossibility" may be a defense, factual impossibility based upon "some extraneous fact not within the knowledge or control of the accused" is not. The defendant in Collins had no knowledge of or control over the farmer's retrieval of the whiskey, and the defendant in Trent did not know that the police raid would interrupt the manufacturing process at the still. These cases undergird later decisions of the Court of Appeals which plainly state, "[L]egal impossibility is a defense; factual impossibility is not." See, e.g., Bloom v. Commonwealth, 34 Va. App. 364, 372, 542 S.E.2d 18, 21, aff'd, 262 Va. 84, 554 S.E.2d 84 (2001).

The Court of Appeals first made this distinction in Parham in 1986. Since that time, the Court of Appeals has continued to cite the language in Parham to distinguish between legal and factual impossibility.

In Bloom, the Court of Appeals decided a case nearly identical to the case at bar. The defendant was communicating over the internet with an undercover police officer posing as a 13-year-old girl, and "proposed that [he and the girl] meet and have sexual relations." Id. at 368, 542 S.E.2d at 20. The defendant was apprehended by police when he went to the designated meeting place, but contended at trial that he could

13

not "be convicted because it was impossible to entice a child to engage in sexual acts when he communicated with [a police officer]." Id. at 369, 372, 542 S.E.2d at 20. The Court of Appeals rejected this argument, stating that

> [t]he defendant thought he was communicating with a young girl with whom he intended to have sexual relations. . . . If the defendant intends to violate the law and, but for some impediment, would complete the unlawful act, then he is guilty of the attempted crime.

Id. at 372, 542 S.E.2d at 22.

The Court of Appeals correctly determined that a police officer posing as a child in an internet chat room is only an impediment to the commission of the crime, an extraneous fact outside of the knowledge and control of the defendant. The non-existence of a "real child" does not make the crime of attempted indecent liberties inherently or legally impossible, but only factually impossible. Thus, the fact that Hix and the defendant in Bloom were communicating with adult law enforcement officers is not a defense to the attempted crime.

The District of Columbia Court of Appeals reached a similar conclusion in In re Doe, 855 A.2d 1100 (D.C. 2004). The Court determined that a defendant who solicited over the internet and arranged to meet a person whom he believed to be 14 years old for sex, could be convicted for attempted enticement of a child in violation of a District of Columbia statute, even though in

14

fact, he communicated with a law enforcement officer posing as a child. The Court rejected the defendant's impossibility defense.

> First, S.D. argues that it is "legally impossible" to commit the D.C. offense of attempted enticement of a child when . . . the intended victim is (unbeknownst to the perpetrator) not a child. This argument confuses "legal impossibility" with "factual impossibility." Legal impossibility as a defense to an attempt offense arises only when the defendant's objective is to do something that is not a crime. That was not the case here. S.D.'s objective, to have sex with a child, was criminal. He made a substantial effort to achieve that criminal objective. As it turned out, S.D. unwittingly aimed his effort at the wrong target – since Ashley5665 was an undercover agent, it was factually impossible for S.D. to accomplish his objective with "her." But . . . [it is not] a defense . . . to a charge of attempted enticement of a child that the defendant was fooled because his target was in reality an undercover law enforcement officer. Whether the targeted victim is a child or an undercover agent, the defendant's conduct, intent, culpability, and dangerousness are all exactly the same. Hence . . . impossibility is not a defense to a charge of criminal attempt when the defendant's actual intent[,] not limited by the true facts unknown to him[,] was to do an act or bring about a result proscribed by law.

Id. at 1106 (citations and internal quotation marks omitted).

Hix solicited and intended to have sex with a 13-year-old girl and went to meet her but "was fooled because his target was in reality an undercover law enforcement officer," id., an extraneous circumstance unknown to him and beyond his control.

15

In such a case, the defense of impossibility is not available

for a charge of criminal attempt.[7]  As Professor LaFave notes:

> [I]t is clear as a matter of policy that no reason
> exists for exonerating the defendant because of facts
> unknown to him which made it impossible for him to
> succeed. . . . [T]he defendant's mental state was the
> same as that of a person guilty of the completed
> crime, and by committing the acts in question he has
> demonstrated his readiness to carry out his illegal
> venture.

2 LaFave, Substantive Criminal Law § 11.5(a)(2), at 234.  The

Court of Appeals did not err in its judgment that Hix' claim of

impossibility was not a defense to the crime of attempted

indecent liberties.[8]

---

[7] Hix also failed to object to jury instruction 5, based on Instruction 8.180 of the Virginia Model Jury Instructions-Criminal and clearly provides factual impossibility is not a defense:
> It is no defense that it was impossible for the
> defendant to have committed the intended crime because
> of circumstances unknown to him.  It is sufficient if
> the defendant's actions would have resulted in the
> completed crime if the circumstances had been as he
> believed them to be.

[8] Hix also contends the Court of Appeals erred in holding that he conceded in his petition for appeal that he believed he was communicating with an actual minor.  Even if we assume the Court of Appeals erred in this instance, it is of no effect as to the merits of Hix' appeal.  The evidence in the record is clearly sufficient to prove that Hix thought he was communicating with a minor.  In each conversation with Hix, Heather told him she was 13.  Hix' questions and comments to Heather show he understood that Heather was a minor: "[W]hat do you look like at 13;" "[I']d get 30 years in prison;" "[I]'m like 36 . . . they would put me under the jail for messen [sic] with you."

Hix also assigned error to the Court of Appeals' determination that he was procedurally barred from arguing (1) the difference between preparation and attempt and (2) the similarity between an undercover police officer pretending to be a minor in the crimes of conspiracy and attempt. Even if we assumed the Court of Appeals erred, it would be of no effect as to the merits of Hix' appeal.

By definition, the crime of attempted indecent liberties requires only that Hix make certain proposals or invitations to the victim. The completed crime of attempt does not require any sexual touching of or by the victim, nor need the victim agree to perform any of the acts. The simple act of proposing or inviting constitutes the completed crime if the offender is over the age of 18, the act is done with lascivious intent and the victim is under the age of 14.

Hix fully intended, based upon the evidence in the record, to solicit sex from a 13-year-old girl. In his chat room conversation with Heather on November 27, 2001, Hix proposed oral sex to Heather after she reminded him of her age, and he tried to set up a meeting. This evidence is sufficient to support the jury's verdict and the judgment of the Court of Appeals.

Hix' comparison of an attempt defense to that in a conspiracy case is not convincing. Conspiracy requires a shared

17

intent and joint action, whereas attempt does not. "[C]onspiracy requires . . . (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective[,] either an unlawful act or a lawful act by unlawful means."  Wayne R. LaFave, Criminal Law § 12.2, at 621 (4th ed. 2003).  On the other hand, "[a]n attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done toward its commission."  Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).  The absence of the actual child in this case thus has no bearing on the crime of attempt.

### B. Code § 18.2-374.3: The Communications Statute

We next review Hix' conviction under the communications statute.[9]  The indictment upon which Hix was convicted, charged him with "us[ing] a communication system . . . for the purposes

---

[9] Code § 18.2-374.3 provides in pertinent part, as follows:

> A. It shall be unlawful for any person to use a communications system, . . . or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity in violation of § 18.2-370 . . . .

of procuring or promoting the use of a minor for any activity in violation of Section 18.2-370, in violation of § 18.2-374.3 of the Code of Virginia."  The indictment does not cite to either subsection A or B, but to Code § 18.2-374.3 as a whole.  Hix argues, however, he could have been convicted only under subsection A of the statute, because the language of the indictment tracks only that subsection which requires the presence of an actual minor.  He contends that his conduct, if proven, could only sustain a conviction under Code § 18.2-374.3(B) and thus there is an impermissible variance between the indictment and the statute under which he was convicted.

The Court of Appeals determined that (1) Hix was procedurally barred from raising this argument for the first time on appeal, and (2) the indictment's language was sufficient as it "did not allege that the Commonwealth was prosecuting [Hix] solely under subsection (A)."  We agree.

At trial, Hix did not argue that his prosecution was limited to subsection A of Code § 18.2-374.3.  Rather, he argued

---

B. It shall be unlawful for any person 18 years of age or older to use a communications system, . . . or any other electronic means, for the purposes of soliciting any person he knows or has reason to believe is a child less than 18 years of age for . . . (iv) any activity in violation of subsection A of § 18.2-370. As used in this subsection, "use a communications system" means making personal contact or direct contact through . . . any electronic communications system, or . . . computer . . . system.

the language "knows or has reason to believe," found in subsection B, "should not be upheld by this Court," but never contended that subsection B did not apply. Instead, he argued the court should ignore the "reason to believe" language of subsection B and apply an actual knowledge standard because "should have known ain't enough . . . . Reason to believe. The statute says it. The statute shouldn't say it." Further, Hix failed to object to jury instruction 6, which tracks the language of subsection B:

> The defendant is charged with the crime of Use of a Communications System for Soliciting Sex with Children. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
> 1)  That the defendant was over the age of 18; and
> 2)  That the defendant did use a communication system for the purpose of soliciting a person who he had reason to believe was a minor to engage in sexual acts . . . .

In sum, Hix did nothing to alert the trial court to his current position on appeal that the prosecution was limited to Code § 18.2-374.3(A).

Because Hix' arguments at trial regarding subsection B were wholly different from what he argues on appeal, he is barred by Rule 5:25 from raising this argument on appeal. Hix asks us to consider this "issue under the ends of justice exception to Rule 5:25," but we see no basis for its application.

20

Thus, we agree with the Court of Appeals that Hix is procedurally barred from challenging his conviction under the communications statute based upon the language of the indictment.  Having determined that Hix waived his argument on variance in the indictment, we find that the evidence is sufficient to sustain his conviction under the communications statute.

### III. CONCLUSION

For the reasons stated above, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.