COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Causey and Senior Judge Haley
Argued at Richmond, Virginia


KEITH WAYNE RIVERS

                                         MEMORANDUM OPINION[*] BY
v.        Record No. 0850-22-2          JUDGE RANDOLPH A. BEALES
                                          OCTOBER 17, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Jayne A. Pemberton, Judge[1]

(Sante John Piracci; Sante J. Piracci P.C., on brief), for appellant.
Appellant submitting on brief.

Craig W. Stallard, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Keith Wayne Rivers was convicted of attempted unlawful creation of

an image of a nonconsenting minor, a felony offense. On appeal, Rivers argues that the evidence

was insufficient to convict him. Specifically, he contends that the Commonwealth failed to prove

that he "had the specific intent to attempt to film a non-consenting person."

I. BACKGROUND

In accordance with established principles of appellate review for a sufficiency of the

evidence case, we view the "evidence in the light most favorable to the Commonwealth, as we

must since it was the prevailing party in the trial court." *Riner v. Commonwealth*, 268 Va. 296,

330 (2004). This standard "requires us to 'discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Lynn S. Brice presided over the jury trial.

Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On July 25, 2021, Rivers encountered a seven-year-old girl, E.B., while in a Target store in Colonial Heights.[2] Rivers's behavior towards E.B. caught the attention of Dennis Spagnuolo, another customer who happened to be in the aisle at the same time and who did not know either Rivers or E.B. Spagnuolo watched as Rivers "st[ood] over top of" E.B., while Rivers was holding his smartphone. Spagnuolo testified at trial that Rivers appeared to be "video taping up and down her legs and around her body." At some point during this interaction, Rivers "turned the phone up under" E.B.'s baggy gym shorts. Spagnuolo observed Rivers's demeanor to be "[v]ery . . . unsettling." Rivers also put his hand on top of the child's head and he "was kind of giggly about it." Spagnuolo approached Rivers and saw that Rivers's smartphone had a video recording application open, and Spagnuolo "could see it clearly videoing something," although he was not sure if it was recording. Spagnuolo confronted Rivers who quickly muttered something and rushed out of the Target. Spagnuolo alerted E.B.'s mother to what Rivers had been doing to E.B. The two of them then quickly asked the Target employees to call 911, and they chased Rivers into the parking lot.

As established by the testimony of Spagnuolo and E.B.'s mother at trial, the pair confronted Rivers as he fled in the parking lot. The mother attempted to grab Rivers's smartphone from his pocket, but she was only able to grab his wallet. Rivers briefly turned and said, "[Y]ou can't do that," but then continued to flee, quickly got into his vehicle, and fled the parking lot. E.B.'s mother found Rivers's ID card in the wallet and provided the ID card to police when they arrived.

Later the same day, Rivers was arrested in his apartment and subsequently interviewed by Officer Morgan Davis. As established by Officer Davis's testimony and body-worn camera footage recorded during the interview, Rivers denied filming E.B. in Target and stated that he did not have

---

[2] We use initials, instead of the child's name, in an attempt to better protect her privacy.

any phone with him at Target at all. A search of Rivers's car and his person uncovered only a small flip phone, not the type of smartphone Spagnuolo and E.B.'s mother had seen in Rivers's possession while at Target. However, Rivers's smartphone was later turned in to police by Rivers's landlord, Robert Szozda.

At trial, Szozda testified that on August 11, 2021, he received a letter from Riverside Regional Jail.[3] The letter, which was introduced into evidence at trial, was signed "Keith" and, according to Szozda's testimony, the return address on the envelope named "Keith Rivers." The letter detailed where the smartphone's location was and explained that "[t]hey wanted to get it but I was drinking and paranoid, so I tossed it." The letter directed Szozda to "[j]ust throw away that [phone] if you find it." Szozda found the smartphone in a clear bag outside, about five to eight feet away from the kitchen window of Rivers's second-story apartment. The police executed a search warrant of the phone's contents. Officer Davis testified that although the search did not yield any viewable videos or pictures of E.B., the phone's contents did show that eight pictures and nine videos had been taken on July 25, 2021 – the day Rivers had been in Target with E.B. – but had been subsequently deleted.

At the close of the evidence Rivers made a motion to strike, which was denied by the trial court. A jury found Rivers guilty of attempted unlawful creation of an image of a nonconsenting minor in violation of Code § 18.2-386.1. *See also* Code § 18.2-26. Rivers now appeals to this Court.

## II. ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting

---

[3] Rivers was incarcerated at Riverside Regional Jail in Prince George, Virginia.

*Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). In such cases, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

On appeal, Rivers argues that the evidence was insufficient to prove that he "had the specific intent to attempt to film a non-consenting person." Rivers contends that "[t]he only direct evidence of the purported attempted filming came from Spagnuolo," that Spagnuolo only observed Rivers's actions for "a period of ten seconds," and that Spagnuolo "could not tell whether it [Rivers's phone] was in fact recording" at the time. Rivers further argues that his own conduct after being confronted in Target was "certainly suspect but is not inconsistent with an innocent person being wrongfully accused of filming a young girl."

At trial, Rivers was charged with and convicted of attempting to create a videographic or still image of E.B., in violation of Code § 18.2-386.1. *See* Code § 18.2-26. Specifically, Code § 18.2-386.1 prohibits knowingly and intentionally creating a videographic or still image of a nonconsenting person by placing the lens of a camera "in a position directly beneath or between a person's legs for the purpose of capturing an image of the person's intimate parts or

undergarments" when that person's intimate parts or undergarments are not otherwise visible to the public.[4]

As this Court has previously stated in binding precedent, given that Rivers was charged only with attempt – not the completed crime – "it was not necessary for the Commonwealth to prove that he, in fact, accomplished 'directly' photographing [the victim] in the proscribed manner under the statute." *Wilson v. Commonwealth*, 53 Va. App. 599, 607 (2009). "For the same reason, it was not necessary for the Commonwealth to offer proof that [Rivers] actually photographed anything." *Id.* (citing *Hix v. Commonwealth*, 270 Va. 335, 341 (2005)). Because Rivers was charged with an attempt crime, the Commonwealth had to prove two elements at trial: (1) Rivers's "intent to commit [the offense]," and (2) "a direct, ineffectual act done toward its commission." *Hix*, 270 Va. at 347 (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)).

Here, Rivers's intent to create an image of E.B. in violation of Code § 18.2-386.1 and Rivers's performance of an act toward the commission of his illegal goal are clearly established by Spagnuolo's testimony. *See* Code § 18.2-26; *Fletcher v. Commonwealth*, 72 Va. App. 493, 506

---

[4] The text of Code § 18.2-386.1 provides, in relevant part, as follows:

> A. It shall be unlawful for any person to knowingly and intentionally create any videographic or still image by any means whatsoever of any nonconsenting person if (i) that person is totally nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast in a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom or other location; or (ii) the videographic or still image is created by placing the lens or image-gathering component of the recording device in a position directly beneath or between a person's legs for the purpose of capturing an image of the person's intimate parts or undergarments covering those intimate parts when the intimate parts or undergarments would not otherwise be visible to the general public; and when the circumstances set forth in clause (i) or (ii) are otherwise such that the person being recorded would have a reasonable expectation of privacy.

(2020) ("Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" (quoting *Barrett*, 210 Va. at 156)); *see McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001). Spagnuolo testified at trial that he saw Rivers waving his phone "up and down [E.B.'s] legs and around her body. Pretty much everywhere." Spagnuolo further testified that Rivers "was scanning over her and he went to her shorts and kind of turned the phone up under it. . . . [H]e went to her underside." Furthermore, Spagnuolo confirmed that Rivers's phone was in a position where the phone camera lens could see under E.B.'s shorts. All the while, Rivers was "very close to her. Very behind her. I mean within inches." In addition, Spagnuolo testified that Rivers "looked like he was video taping." Spagnuolo further testified that he knew the phone's camera or video application was running because Spagnuolo "could see what [the phone] was looking at." When asked, "was the camera or video app opened," Spagnuolo answered, "Yes." The jury found Rivers guilty, and in so doing implicitly found Spagnuolo's testimony credible. *See Perkins*, 295 Va. at 328 ("The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009))).

In addition to Spagnuolo's credible testimony, the record before us on appeal contains further evidence of Rivers's consciousness of guilt. As established by the testimony and exhibits at trial, Rivers fled from the Target once confronted. After E.B.'s mother grabbed Rivers's wallet, he briefly protested but then quickly fled the parking lot without attempting to go back and recover his wallet. Following Rivers's arrest, Rivers sent a letter to his landlord, Robert Szozda, in which Rivers admitted, "I already made a bunch of bad decisions, but maybe I can move forward in the right direction from here." In that same letter, Rivers described where he left his smartphone. Rivers stated, "I threw [it] out the window by the grill," and "[t]hey wanted

- 6 -

to get it." Rivers asked Szozda to "[j]ust throw away that if you find it." Szozda then found the smartphone in a clear plastic bag right where Rivers said it would be – on the ground below the second-story window of Rivers's apartment. Not only was the jury entitled to infer that Rivers concealed this smartphone, the jury was also entitled to determine that Rivers lied during his interview with police when he told Officer Davis that he never had his smartphone with him at Target. *See Perkins*, 295 Va. at 328-31. Finally, when police later searched Rivers's smartphone, they found data establishing that eight photos and nine videos were created on the smartphone on the date that Rivers positioned his phone camera under E.B.'s shorts but that the photo and video files themselves had been deleted.

As stated previously by this Court, "the fact of an accused's *flight*, escape from custody, resistance to arrest, *concealment* . . . and *related conduct* are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) (emphases added); *see Jones v. Commonwealth*, 279 Va. 52, 58 (2010) (finding that acts of deceitful behavior immediately following the commission of a crime may be considered as evidence that shows the defendant's consciousness of guilt); *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) ("[I]n drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt.").

Given the totality of the evidence presented in the case now before us, with all reasonable inferences drawn therefrom, we certainly cannot say that no rational trier of fact could have found the evidence sufficient to conclude that Rivers attempted to create a video or photograph of seven-year-old E.B. in violation of Code § 18.2-386.1 by placing his phone camera lens underneath E.B.'s shorts facing toward her undergarments and intimate parts.

## III. CONCLUSION

For all of the foregoing reasons, we affirm the trial court.

*Affirmed.*