COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Frucci
Argued at Richmond, Virginia

GENE ELBERT ROUB

MEMORANDUM OPINION* BY
v.      Record No. 1431-24-2      JUDGE MARY GRACE O'BRIEN
OCTOBER 14, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

James Joseph Ilijevich for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Gene Elbert Roub of using an electronic communication system to

solicit, with lascivious intent, a sex act from a child he knew or had reason to believe was

younger than 15 years old, in violation of Code § 18.2-374.3(C).

The conviction followed an undercover investigation by a police officer posing as a

14-year-old female on "Whisper," a social media platform. On appeal, Roub challenges the

sufficiency of the evidence to prove his "intent . . . to propose lascivious acts to an individual he

actually thought was a [14] year old girl." He also assigns error to the jury's "fail[ure] to follow

an agreed jury instruction" that he "acted as a result of entrapment tactics by law enforcement."

We affirm the conviction.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

I. Text Messages on Whisper

In July 2023, Roub exchanged several text messages on Whisper with a person using the screen name "Nevaeh." Nevaeh claimed to be a 14-year-old girl living in Fredericksburg but was, in fact, Detective Mike Goosman.[1] At the time, Goosman was using Whisper to investigate internet crimes against children.

After first exchanging messages about a new video game, Nevaeh asked Roub for his age, sex, and location. Roub responded, "Too old/M/va," and Neveah replied, "I'm 14 f Fredericksburg." When Roub asked whether Nevaeh was "14 or 24," she confirmed 14. Roub acknowledged that she was "[a] lot young" and he should not chat with her. Nevaeh said she was "mature for [her] age." Roub responded, "Mature for your age doesnt make for a good plea with courts."

Nevaeh mentioned that she had experimented with drugs and alcohol, and Roub replied, "Wow you are bold. Next you'll say you[] hook up with older men." He said to "stick to your age group" until she was 18. But Roub also remarked that he thought Neveah was "a cop" who was online "[t]o catch pedos" and he knew of another person who had been "nailed" by the police "for a 14 year old."

In another conversation, Roub commented that Neveah could "wander with no[] restrictions" because no one was supervising her at home that night, and he suggested that Nevaeh ask someone from Whisper to "wander" with her. Nevaeh responded that she "[j]ust ha[d] 2 find sumone who don't care about age lol." Roub stated that Nevaeh might "end up getting railed somewhere then." Nevaeh questioned what "railed" meant, and Roub answered "sexed" and told her to "use condoms."

---

[1] Goosman's name is incorrectly spelled in the transcript as "Guzman."

Roub reiterated that he was in his 30s and was being "careful how much info" to give her. Roub told Neveah about his "[w]eird dreams" from the night before, describing them as "nc17" and involving graphic sex acts with a "petite black girl." He said Neveah had "put [the dreams] in his he[a]d" and asked her to describe herself. Neveah said she was "5'5[,] 95 pounds, kinda thin." Roub said he did not "wanna risk jail" because he was "at least double [Neveah's] age."

Roub asked Nevaeh to describe what she wanted from him in a potential "hook up," because if she said it, he was "not guilty of being the perv here." Roub said he was "[b]eing highly careful [be]cause" he did not "want a charge."

During another interaction, Roub sent a series of messages and an emoji to convey that his penis was "above average," and he asked if Nevaeh was a virgin. She said no, and Roub replied that he hoped she used condoms and he would bring some if they met up because he was not "dumb." Roub said he was still "paranoid" that Nevaeh was "popo [i.e., police]." He also said that he was not "tryin to get [her] pics" because "that[] is illegal."

In a subsequent conversation, Roub indicated that he could visit her in Fredericksburg once his car was fixed and asked if Nevaeh was "horny for old man dick." On another occasion, Roub explicitly described a "fantasy" of them performing various sex acts on each other and speculated that, although Nevaeh was not "skilled," she was willing to put more "work behind it than others." Roub asked if Nevaeh was on birth control. Nevaeh responded that her school counselor had gotten pills for her because her mother would not allow it, but she had recently run out. Roub said he used condoms with spermicide "so no accidents happen."

Nevaeh asked about "other wild plans" he had for her, and Roub responded in explicit detail but also said he liked to "get in the moment and see what happens instead of planning it all out." He asked Nevaeh what she liked and added that he was "still 50/50" as to whether she was "a c[o]p trying to do th[e] catch a predator thing."

Neveah later said that she was a virgin and had lied because she did not want to seem boring. Nevaeh reiterated that she was 14, that Nevaeh was her real name, and that she "only lied about having sex b4" because "no one else sticks around when I tel[l] them." Roub said he was "hesitant" and "debating the pros and cons of this" because he knew "how fucked" he would be if he got caught and he had "never done this with anyone under 18." Nevaeh responded, "So you don't mind that I'm 14, just worried about getting caught?" Roub responded that he "kinda" minded that Nevaeh was 14 but "getting caught [wa]s a huge worry" and it was "not what [he] should be doing honestly."

Roub said he was in a relationship and worried about getting "reported" if his partner found out about Neveah. Roub and Neveah exchanged messages about whether to keep their relationship a secret or let Roub's partner join their sexual encounter. Roub said he was "laying with [his] pants down," wondered if she was masturbating, and described in explicit detail what he wanted from a sexual encounter with her. Roub said he wanted Neveah to "finger" herself "[t]ill [she] cum" and beg for sex with him.

Roub asked where Neveah lived in Fredericksburg, and she gave the name of her apartment complex. Roub wondered, "Your mom though[?]" and explained that they should meet in public "[f]or both of our safety." Neveah suggested a Sheetz gas station near her apartment. Roub asked if Nevaeh would get in his car and "go right for it," again mentioning they could not do anything "without condoms" because he was not going to "knock [her] up."

Roub expressed concern that the "cops w[ould] grab" him at the Sheetz. He described the situation as "too good to honestly be true" and said he did not "want to get caught" because he did not "wanna ruin [his] life over sex."

As they exchanged additional messages about meeting, Roub continued to say he was "nervous" because of "jail and crime" and "ha[d] no idea why [he was] going along with this."

He knew he "would thro[w] everything away." Roub added that he thought about Neveah all day and whether he had "to worry about jail tomorrow" if he showed up to meet her. Neveah told him not to worry and again suggested meeting at her apartment. Roub reiterated that he wanted to meet "somewhere public" and that they should "stick with the Sheetz plan." Roub remarked that he knew he "shouldnt do this."

In their final conversation on July 19, Roub promised to meet Nevaeh at the designated Sheetz at 10:00 p.m., and he confirmed that he would bring condoms and the apple-flavored alcohol she requested. Law enforcement ultimately apprehended Roub that night at the Sheetz, and he had the condoms in his pocket and had purchased the alcohol.

## II. Motion to Strike

At the conclusion of the Commonwealth's case at trial, Roub moved to strike, arguing that the evidence was insufficient to establish his "intent to actually engage in any of these acts with a [14] year old girl." According to Roub, his repeated messages that "he thought the individual was a cop" showed he had no "knowledge and intent" that he was communicating with a minor. Further, his messages telling Nevaeh to "stick to [her] age group" showed a "lack of intent to engage in sexual activity with someone who's under [18]." Roub noted that he made "several attempts not to meet up," which negated the intent to engage in sex with a 14 year old. "Because . . . the evidence show[ed] that [Roub] believed it was either a cop or possibly an older individual," the Commonwealth failed to prove "intent" and "that he had reason to believe she was actually [14]."

The Commonwealth responded that the "intent" element in Code § 18.2-374.3 requires proof of "lascivious intent in terms of the solicitation," not proof that "he's actually attempting to have sex with her." The Commonwealth also contended that Roub's motion challenged the weight of the evidence, not its sufficiency.

In rebuttal, Roub argued the evidence was insufficient to prove solicitation because he did not initiate the interaction. There was no evidence that he was on Whisper "looking for underage people to engage in relations with" or "started up any conversations with people for that purpose." The court denied the motion to strike, and Roub introduced no evidence in his defense.

### III. Jury Instructions, Closing Argument, and Guilty Verdict

The court provided an agreed-upon jury instruction regarding Roub's affirmative defense of entrapment. Jurors were instructed to acquit if they found that (1) Roub "had no previous intent or purpose to commit the crime;" (2) Goosman "originated in the mind of [Roub] the idea to commit the crime;" and (3) Goosman "caused [Roub] to commit the crime by trickery, persuasion[,] or fraud."

Although he had not raised entrapment in his motion to strike, Roub argued it in closing to the jury, relying on the three elements in the instruction. The jury returned a guilty verdict, and Roub did not file a motion to set it aside.

### ANALYSIS

### I. Knowledge of Age under Code § 18.2-374.3

Roub argues the court erred in finding sufficient evidence to sustain a conviction because the Commonwealth failed to prove that he knew or had reason to believe that Nevaeh was younger than age 15.

"A verdict of the jury, upon which the trial court enters judgment, settles all conflicts of testimony in favor of the prevailing party and entitles that party to all just inferences deducible therefrom." *Hix v. Commonwealth*, 270 Va. 335, 341 (2005). An appellate court "view[s] the evidence in the light most favorable to the Commonwealth, as the prevailing party, and will not set aside the verdict unless it is plainly wrong or without evidence to support it." *Id.*

A conviction under Code § 18.2-374.3(C) requires proof that the defendant was communicating with "any person he knows or has reason to believe is a child younger than 15 years of age." Actual knowledge of the child's age is not required, only that the defendant "ha[d] reason to believe" the child was a minor. Code § 18.2-374.3; *see Stoltz v. Commonwealth*, 297 Va. 529, 537 (2019) (affirming solicitation conviction where evidence "amply demonstrate[d]" that the defendant had "*reason to believe*" he was communicating with a minor, even if the facts "d[id] not prove that [he] actually knew"). And, as Roub himself concedes, the statute "does not require the solicitation of an actual minor." *Grafmuller v. Commonwealth*, 57 Va. App. 58, 63 (2010) (quoting *Podracky v. Commonwealth*, 52 Va. App. 130, 138 (2008)). "[T]he defendant's solicitation of sexual behavior from a person that he believes is a child constitutes the behavior that the legislature intended to prohibit." *Id.* at 64.

In challenging the sufficiency of the evidence to prove he had reason to believe that Neveah was a minor, Roub points to her Whisper account profile listing an age of 18,[2] her statements about prior drug and alcohol use and sexual activity, and her suggestion that they meet privately. According to Roub, this evidence made it "not clear" that he knew or had reason to believe he was communicating with a minor. He also claims the evidence was insufficient because he sent messages questioning Neveah's identity and asking whether she was a police officer. But Roub's reliance on isolated pieces of evidence to challenge the overall sufficiency defies the standard of review, which requires that we view the evidence in the light most favorable to the Commonwealth and discard any evidence that conflicts with the Commonwealth's evidence. *See Commonwealth v. Cady*, 300 Va. 325, 329 (2021).

---

[2] Goosman testified that to satisfy Whisper's age restrictions, he listed Neveah's age as 18 in her account profile. Nothing in the record, however, establishes that Roub ever viewed this profile.

So viewed, the evidence was sufficient to establish that Roub had reason to believe that Nevaeh was a minor. Nevaeh told Roub that she was 14 near the beginning of their online conversation and reiterated this age when Roub asked, "14 or 24?" Roub commented that he should not be chatting with Nevaeh because he was "at least double [her] age" and he knew "how fucked" he would be if he and Nevaeh got caught. Roub said he had "never done this with anyone under 18" and that he "kinda" minded that Nevaeh was 14. He worried about getting "reported" by his partner, and he wanted to meet in public to avoid detection by Neveah's mother. Further, Roub's messages questioning whether Neveah was a police officer did not negate the ample evidence that he had reason to believe she was a minor. *See Stoltz*, 297 Va. at 536-37.

It was within the province of the jury to assess all the messages and other evidence in this case and determine that Roub had reason to believe he was communicating with and soliciting sex acts from a child under the age of 15. *See Pease v. Commonwealth*, 39 Va. App. 342, 354 (2002) (en banc) (stating that "[w]hat inferences are to be drawn from proved facts is within the province of the jury" (quoting *Cantrell v. Commonwealth*, 7 Va. App. 269, 290 (1988))); Code § 18.2-374.3(C). Based on our review of the record, we conclude that this determination was not "plainly wrong or without evidence to support it." *Hix*, 270 Va. at 341.

## II. Entrapment

Roub assigns error to the jury's "fail[ure] to follow an agreed jury instruction" and find that he "acted as a result of entrapment tactics by law enforcement." Roub claims he preserved this issue in his closing argument to the jury. This assignment of error is procedurally defaulted for two reasons.

First, because the assignment of error challenges the jury's finding, it does not comply with Rules 5A:20(c)(2) and 5A:18. *See Barnes v. Commonwealth*, 80 Va. App. 588, 594-96

- 8 -

(2024). Rule 5A:20(c)(2) deems "insufficient" an assignment of error that does not "address the findings, rulings, or failures to rule on issues in the trial court." Rule 5A:18 similarly requires assigning error to a "ruling of the trial court." "[F]or an assignment of error to comply with Rule 5A:20(c)(2) and Rule 5A:18, it must identify an erroneous ruling, finding, or failure to rule *by the trial court*." *Barnes*, 80 Va. App. at 595. In *Barnes*, the appellant was found to have waived his assignment of error asserting that "[t]he . . . jury . . . erred" in rendering inconsistent verdicts. *Id.* at 594 (alterations in original). Because the appellant "challenge[d] the findings of the jury, not the trial court" and "fail[ed] to state the findings or rulings of the trial court he intend[ed] to challenge," the issue was waived. *Id.* at 595. As in *Barnes*, Roub challenged the findings of the jury, not the trial court, and he failed to identify any findings or rulings of that court for us to reverse in his assignment of error. Accordingly, the assignment of error is insufficient under Rule 5A:20(c)(2); *see id.*

Roub also failed to make the proper argument below that would preserve his entrapment defense for appellate review. His claim that he preserved the issue in his closing argument is incorrect. "[I]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law. Only a motion to strike the evidence accomplishes that objective in a jury trial." *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (en banc); *see also Rompalo v. Commonwealth*, 72 Va. App. 147, 156 n.3 (2020). Roub did not challenge the sufficiency of the evidence on grounds of entrapment during his motion to strike. Although he argued entrapment in closing to the jury, he did not present the issue to the court during his motion to strike, nor did he file any motion to set aside the jury's guilty verdict. Therefore, Roub never gave the trial court an opportunity to rule on the sufficiency of the entrapment evidence to negate his guilt. *See Williams v. Commonwealth*, 57

Va. App. 341, 352 (2010) (stating that, at trial, evidence of an affirmative defense must be sufficient to raise a reasonable doubt of guilt).

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The purpose of Rule 5A:18 "is to ensure that litigants 'make timely and specific objections, so that the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Hannah v. Commonwealth*, 303 Va. 106, 124-25 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review" on appeal. *Hawkins v. Town of South Hill*, 301 Va. 416, 434 (2022) (alterations in original) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). Because Roub did not obtain a ruling on the sufficiency of his entrapment evidence as required by Rule 5A:18, we will not address that issue for the first time on appeal. *See id.* Although there are exceptions to Rule 5A:18, Roub does not invoke them, and we will not do so sua sponte. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

CONCLUSION

For these reasons, we affirm Roub's conviction under Code § 18.2-374.3.

*Affirmed*.